ROTAN GROCERY CO. v. JACKSON.

(Court of Civil Appeals of Texas. Austin. Jan. 22, 1913.)

1. PRINCIPAL AND AGENT (§ 105*)—POWER OF AGENT—COLLECTION OF DEBTS DUE PRINCIPAL—MEDIUM OF PAYMENT.

An adjuster and collector for a grocery company, while authorized to accept security for debts due his principal, is not authorized to accept payment in anything other than money, and hence his taking of a conveyance of land from a debtor with an agreement to convey to any purchaser the debtor might find prior to a certain date was not in the scope of his authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374; Dec. Dig. § 105.*]

2. PRINCIPAL AND AGENT (§ 166*)—LIABILITY OF PRINCIPAL—ACCEPTANCE OF BENEFITS—AGENT'S CONTRACT.

The fact that a principal accepted notes executed by its collector and indorsed by its debtor in satisfaction of the indebtedness did not bind it by its collector's agreement, allowing the debtor a certain time to find a purchaser for the land, whereupon the collector was to reconvey, unless the principal had notice of such agreement at the time he accepted the notes.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 627–633; Dec. Dig. § 166.*]

3. VENDOR AND PURCHASER (§ 350*)—ACTION—EVIDENCE.

Evidence, in an action for damages for breach of a contract whereby defendant's adjuster, to whom plaintiff had conveyed land in settlement of his indebtedness, agreed to reconvey if plaintiff should find a purchaser within a certain time, held not to sustain the allegation that the conduct of the defendant and its agent in refusing to convey the land to a purchaser had prevented plaintiff from acquiring land in exchange.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1043–1046; Dec. Dig. § 350.*]

4. EVIDENCE (§ 474*) — OPINION EVIDENCE — SPECIAL KNOWLEDGE OF SUBJECT-MATTER—VALUE OF LANDS.

In an action for damages for breach of contract to reconvey land to any purchaser plaintiff might find within a certain time, whereby plaintiff lost the benefits of a trade for land in R. county, a witness for plaintiff, who testified that he was in R. county in 1908, saw the survey of which the land referred to was a part, without knowing whether he saw that particular 160 acres, who examined the league with reference to its value, who had made some trades for R. county lands upon an exchange basis, and who knew of no cash sales of land in R. county during 1910, did not disclose such a knowledge of facts as would entitle him to give his opinion as to its value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action for damages for breach of a contract whereby plaintiff lost the benefits of an exchange for land in R. county, where it appeared that such land was incumbered for at least $375 and there was no other testimony tending to show its value, error in admitting plaintiff's opinion evidence as to its value was material.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

Action by E. L. Jackson against the Rotan Grocery Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. D. Williamson, of Waco, for appellant. A. P. McKinnon and Morrow & Morrow, all of Hillsboro, for appellee.

KEY, C. J. In 1909, E. L. Jackson was indebted to the Rotan Grocery Company in the sum of $3,450, and, being unable to pay the same, he entered into a contract with W. N. Orand, who represented the Rotan Grocery Company, as its adjuster and collector, as a result of which contract Jackson and his wife executed a warranty deed conveying to Orand a 150-acre tract of land in Hill county, and Orand executed to Jackson four promissory notes for the sum of $850 each, with interest, and secured by a vendor's lien

on the land, one payable January 1, 1911, one January 1, 1912, one January 1, 1913, and the other payable January 1, 1914. This occurred October 26, 1909, and at the same time, and as part of the same transaction, it was agreed that Jackson was to indorse the four notes referred to to the Rotan Grocery Company in payment of his indebtedness to that company, and that Jackson was to have until January 1, 1911, to find a purchaser for the 150 acres of land, who would assume the payment of the notes referred to and of a prior lien for $1,500, in which event Orand agreed to execute a deed to such purchaser, conveying to him the land. The four notes were thereafter indorsed by Jackson to the Rotan Grocery Company, and that company canceled Jackson's indebtedness to it. June 6, 1910, Orand, joined by his wife, executed a warranty deed, conveying the 150 acres of land to the Rotan Grocery Company, for a recited consideration of $5, and of the cancellation of the four notes executed by Orand, and the assumption by the Rotan Grocery Company of the $1,500, indebtedness secured by the prior lien. In February, 1911, E. L. Jackson brought this suit against the Rotan Grocery Company and recovered a verdict and judgment for $900, from which judgment the Rotan Grocery Company has appealed.

The recovery was had upon the theory of a breach of the contract by which the plaintiff was to have until the 1st day of January, 1911, to find a purchaser for the 150 acres of land. He alleged, and attempted to prove, that in May, 1910, he had negotiated a trade with one John Foster, by the terms of which the 150 acres of land referred to was to be conveyed to Foster, subject to the liens against it, and Foster was to convey to Jackson 160 acres of land in Reagan county, subject to a certain incumbrance against it. There was testimony tending to show such verbal agreement between Jackson and Foster in the month of May, 1910, and testimony tending to show that the plaintiff requested Orand to convey the Hill county land to Foster, which he failed to do; but there was no proof that a demand was made upon the Rotan Grocery Company after Orand and his wife deeded the Hill county land to that company.

[1] The plaintiff sought to hold the Rotan Grocery Company liable upon the theory that, in making the contract which resulted in the plaintiff and his wife conveying the land to Orand, and the latter's agreement to convey to any purchaser the plaintiff might find prior to January 1, 1911, was made by Orand as agent for the Rotan Grocery Company, and was within the scope of his authority as such agent. We think the proof fails to show that Orand's agency extended that far. The testimony bearing upon that subject merely shows that he was the adjuster or collector for the Rotan Grocery Company; and, while it may be conceded that such an agent has authority to accept security for the debt, he has no authority to accept payment in anything other than money.

[2] The fact that the Rotan Grocery Company accepted the notes executed by Orand and indorsed by Jackson, in satisfaction of Jackson's former indebtedness to the company, did not bind it by Orand's former agreement with Jackson, allowing him further time to find a purchaser for the land, unless Orand was acting within the scope of his agency, and made that agreement as such agent; or unless the company had notice of such agreement at the time it accepted the notes.

[3] The proof shows that on August 31, 1910, the Rotan Grocery Company wrote a letter to the plaintiff, Jackson, offering to deed the Hill county land to him, if he would execute to it notes similar to those executed by Orand, with interest up to date, and the plaintiff to assume the prior lien for $1,500 and interest. This offer was not accepted by the plaintiff. He alleged in his petition that the conduct of the defendant and its agent, Orand, in refusing to make a deed to the Hill county land to John Foster, had prevented the plaintiff from acquiring the Reagan county land from Foster, and that thereby the plaintiff had been damaged $2,400, the alleged value of the Reagan county land. The proof fails to show that the conduct complained of produced the result alleged. The negotiations between the plaintiff, acting through his agent, Walker, and John Foster, acting through his agent, E. L. Foster, occurred in the month of May, 1910. It was not shown that any time was fixed within which that trade was to be consummated; nor was it shown that it was broken off by Foster for the reason alleged in the plaintiff's petition, or for any other reason. On the contrary, the undisputed proof shows that the negotiation was terminated by the plaintiff, acting through his agent, Walker; and there was no testimony tending to show that on August 31, 1910, when the Rotan Grocery Company tendered the land back to the plaintiff, and offered to put it in his power to convey all the right that he claims to have had therein to Foster, or any one else, the latter was not willing to and would not have consummated the original trade. Hence we sustain appellant's twentieth assignment of error, which complains of the action of the trial court in refusing a special instruction applicable to the phase of the case last mentioned.

[4] We also sustain the tenth assignment, which complains of the action of the court in permitting the witness Vaughn to testify as to the value of the Reagan county land over the objection that the witness had not qualified himself to testify as to the market value of the land in the year 1910. He tes-

tified that in the year 1908 he was in Reagan county, saw the league survey, of which the land referred to was a portion, but did not know that he saw that particular 160 acres; said he examined the league with reference to its value; that he had never seen it since, and had not been in Reagan county since then. He also stated that he had made some trades for Reagan county land, not upon a cash basis, but exchanging one tract for another, and that in that way he knew the value of the Foster 160 acres; said he knew of no cash sales of land in Reagan county during the year 1910, but thought he knew the market value of the 160 acres during that year, which value he fixed at from $8 to $10 per acre. He also stated that 1910 was a dry year in that county, and his testimony shows that the value fixed by him was not with reference to what the land would sell for at a money consideration, for he stated in so many words: "Yes, sir; that is the trading value of the land." We think the court should have sustained appellant's objection, and not permitted the witness Vaughn to testify as to the value of the land. It is not denied that, in many cases, testimony as to value is, to a large extent, a matter of opinion; but, when such is the case, the witness should be required to disclose a knowledge of such facts as would entitle him to give an opinion that would be worth more than the opinion of the jurors.

[5] There was an incumbrance against the Reagan county land of at least $375, and there was no other testimony tending to show the value of that land, and therefore the error in admitting the testimony of the witness Vaughn cannot be regarded as immaterial.

What we have heretofore said sufficiently indicates the views of this court as to the various other questions presented in appellant's brief. Whether or not appellee should be required to produce such writing, signed by Foster, as would take the verbal agreement between them out of the statute of frauds, is a question which has not been presented to nor considered by this court.

Our conclusion is that the judgment should be reversed, and the cause remanded, and it is so ordered.

Reversed and remanded.