## CARVER v. MOORE.    (No. 6858.)*

(Court of Civil Appeals of Texas. Austin. June 3, 1925.)

1. **Limitation of actions ⬅⟹28(1)—Two years' statute applicable to action for damages for fraud.**

The two-year statute of limitations applies to an action for damages resulting from fraud.

2. **Limitation of actions ⬅⟹100(1)—Limitation does not begin to run until fraud is, or by use of reasonable diligence should have been, discovered.**

In cases of fraud, limitation does not begin to run until fraud is discovered, or by the use of reasonable diligence should have been discovered.

3. **Limitation of actions ⬅⟹99(1)—Injured party, in legitimate transaction to prevent limitation from running, must show concealment or fraud inducing him not to bring suit within prescribed time.**

Where a cause of action arose out of a legitimate transaction, in order to prevent limitation running against him, injured party must show either that his cause of action had been concealed from him after it arose or that he had been induced by fraud or concealment not to bring his suit within time prescribed by law.

4. **Limitation of actions ⬅⟹100(11)—Statute runs against action for fraud where it conclusively appears that injured party in possession of facts putting reasonably prudent person on notice of such fraud.**

If it conclusively appears that one suing for damages for fraud was in possession of facts or information, which, if followed, would have put reasonably prudent person on notice of such fraud, then as matter of law he is guilty of negligence, and limitation would run against his action from time fraud should have been discovered.

---

⬅⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied 275 S. W. 682.

5. **Limitation of actions ⊚═179(1)—Petition in action for fraud held sufficient to take question of whether action barred by two-year statute to jury.**

In action for damages for fraud in exchange of lands, petition *held* to allege facts and circumstances sufficient to take question whether his action was barred by two-year statute to jury.

6. **Vendor and purchaser ⊚═232(1)—Possession of real estate prima facie evidence of ownership.**

Possession of real estate is prima facie evidence of ownership, and notice to all the world of the nature of possessor's title.

7. **Vendor and purchaser ⊚═37(2)—Vendee has right to rely on vendor's representation as to location.**

Purchaser of land has right to rely on vendor's representations as to the location of the land as true.

8. **Adverse possession ⊚═19—Possession of tract containing more than 5,000 acres, not separately inclosed by fence, not adverse.**

Where tract of land consists of more than 5,000 acres, possession by one other than owner of the land not separately inclosed by fence, could not, under Rev. St. arts. 5677, 5678, have been adverse to title of one acquiring land from owner.

9. **Limitation of actions ⊚═199(2)—Evidence held not to show as matter of law that plaintiff was guilty of negligence barring him under statute.**

In action for damages from fraud in exchange of land, evidence *held* not to show as matter of law that plaintiff was guilty of such negligence in his delay in discovering the fraud as would set in motion the statute of limitations against him, prior to time when he actually discovered it.

10. **Appeal and error ⊚═1001(1)—Jury's findings on question of fact not disturbed on appeal, where sustained by evidence.**

Question whether plaintiff, suing for damages for fraud in exchange of lands, was guilty of such negligence and delay in discovering fraud as bars his action under statute of limitations, being one of fact and having been submitted to jury, their findings being sustained by evidence, may not be disturbed on appeal.

11. **Limitation of actions ⊚═100(13)—That plaintiff, alleging different land than shown to him was conveyed, leased it to another through agent, not notice to him of where land located.**

That plaintiff, alleging fraud in exchange of lands in that land different from that shown to him was conveyed, leased land conveyed to him, did not constitute notice or charge him with knowledge of where his land was actually located, where he leased it through an agent.

12. **Fraud ⊚═59(3)—Measure of damages from fraud in exchange of land stated.**

The measure of damages for fraud in exchange of lands is difference between value of

that parted with by party defrauded and value of that received by him in such exchange.

13. **Evidence ⊚═524—Witness held competent to testify as to market value of land.**

That witness was county surveyor and helped survey land in question and acquired information as to the value of the land by talking with those who had purchased lands in the locality, though not knowing of his knowledge what land of character of that in controversy sold for, *held* to qualify him to testify as to market value of land in question, where it was situated in a semiarid, sparsely settled, and distant portion of the state.

14. **Fraud ⊚═58(1)—Market value of land cannot be proven where wholly worthless.**

Where land alleged to have been fraudulently exchanged in place of that shown to plaintiff was almost entirely on rugged mountains, without water and wholly worthless, no market value of such land could have been proven.

15. **Fraud ⊚═59(1)—Intrinsic value of land having no market value, looked to in determining measure of damages.**

Where land alleged to have been fraudulently exchanged in place of that shown to plaintiff had no ascertainable market value, its intrinsic value must be looked to in determining measure of damages.

16. **Evidence ⊚═113(21)—Intrinsic value of land determined by its character, location, use, availability, and rental value.**

The intrinsic value of land can be determined by its character, location, use, availability, rental value, and such other facts and circumstances as would influence person buying such land in arriving at its value.

17. **Appeal and error ⊚═218(2)—Defendant, not objecting to submission of market value of land, cannot complain thereof on appeal.**

In action for damages for fraud in exchange of land, where no proper objection was made to question submitting market value of the land, defendant cannot complain on appeal that market value instead of intrinsic value was submitted.

18. **Appeal and error ⊚═218(2)—Objection to issue not considered on appeal, where not shown to have been presented to court below.**

Objection to submission of issue cannot be considered on appeal, where appellant's purported objection to such issue did not complain of its form, or that it was erroneously stated, and record fails to show that objection was ever presented to court below.

19. **Appeal and error ⊚═218(2)—Objection to submission of issue waived, where improper form not objected to nor request for submission in proper form made.**

In action for damages for fraud in exchange of land, where defendant failed to object to improper form of issue, in that it submitted whether plaintiff could have discovered fraud by exercise of reasonable diligence within two years after transaction, rather than four years as should have been submitted under the facts, and did not request in writing submission of is-

sue in proper form, defendant will be. held to have waived his objection thereto.

**20. Appeal and error ⊚═930(3)—Presumed that trial court found in manner to support his judgment, there being evidence to sustain such finding.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, there being evidence to support finding that plaintiff, suing for damages for fraud in exchange of lands, was not guilty of such lack of diligence as set in operation against him the statute of limitations, it will be presumed that court found thereon in such manner as to support his judgment.

**21. Appeal and error ⊚═218(2)—Objections to issues not presented below not considered on appeal.**

Objections to submission of special issues cannot be considered on appeal, where not shown to have been presented to the trial court.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by T. T. Moore against O. B. Carver. Judgment for plaintiff, and defendant appeals. Affirmed.

A. L. Curtis, of Belton, and Black & Morrow, of Austin, for appellant.

W. R. Brown and J. B. Daniel, both of Temple, for appellee.

BAUGH, J. T. T. Moore sued O. B. Carver for damages for fraud in the exchange of lands. Carver whose lands consisted of 8 sections of 640 acres each in Culberson county, through his agents, showed Moore level grazing lands in what was known as the Ed. Jones pasture, but his deed conveyed to Carver 8 sections in a rugged, mountainous section several miles away from the lands shown him. The case was submitted to a jury on special issues, and upon their findings the court rendered judgment in favor of Moore for $22,014.28, from which judgment this appeal is prosecuted. Further facts will be set forth in discussing the issues raised.

[1-5] Appellant's first contention, contained in his first, second, and fourth propositions, is that plaintiff's petition failed to allege facts sufficient to prevent his cause of action being barred by the 2 and 4 year statutes of limitation. The exchange of properties took place on September 14, 1917. The suit alleging fraud was not filed until September 4, 1923. This being an action for damages resulting from fraud, the 2-year statute applies. Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S. W. 40; Bass v. James, 83 Tex. 110, 18 S. W. 336.

The rule as to pleading in such case is well stated by Justice Talbot in Powell v. March (Tex. Civ. App.) 169 S. W. 939, as follows:

"The rule, where one seeks to avoid the bar of the statute on the ground of fraud, is that he must allege the facts upon which he relies, so the court may determine from the pleadings whether he is entitled to the relief sought, assuming, as must be done on demurrer, such allegations to be true. If, as has been well said, it appears from the complainant's own allegations that the means were at hand to readily discover the fraud complained of, and such means of information would have been used by a person of ordinary care and prudence in the transaction of his own business, then he will be held to have had notice of everything which a proper use of such means would disclose; and, a failure to avail himself of such means or avenues of information appearing, the issue presented is one of law for the decision of the court, and not a question of fact for the determination of the jury."

See, also, Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48.

The rule that limitation in cases of fraud does not begin to run until the fraud is discovered, or by the use of reasonable diligence should have been discovered, is too well established in our jurisprudence to require citation of authorities. In his petition appellee set out all the facts and circumstances surrounding the transaction and through which the exchange of lands was affected; alleged that he was a resident of Bell county, Tex., and engaged in the mercantile business there; that he had never resided in Culberson county, Tex., which was 600 miles away; that the lands he inspected and thought he was buying were grazing lands inclosed along with other lands in Ed. Jones' pasture; that it was usual and customary for nonresident owners of lands in that part of the state to lease them to ranchmen for grazing purposes; that there was no occasion for the owner to go upon the lands for that purpose; that these lands were situated in a remote and sparsely settled portion of the state, many miles from a railroad; that there had been no occasion for him to go upon and inspect them after the exchange, and no fact or circumstance coming to his knowledge from the time he acquired the land until June, 1923, when he received a letter from an abstracter in Culberson county, that would arouse any suspicion or put a reasonably prudent person upon notice that he had been defrauded.

But appellant contends that it was not enough that appellee, plaintiff below, allege and show that he was misled to his injury, or deceived by Carver, at the time of and prior to the transaction, but that he must plead and prove, after that time, a concealment by Carver of his fraud or concealment of facts which would prevent Moore from thereafter discovering the fraud originally perpetrated upon him, citing numerous cases, and especially relying upon Munson v. Hallowell, 26 Tex. 475, 84 Am. Dec. 582; Hudson v. Wheeler, 34 Tex. 356; Kuhlman v. Baker,

50 Tex. 630; Railway Co. v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52; Prosser v. Bank (Tex. Civ. App.) 134 S. W. 781; and McFaddin, etc., Land Co. v Texas Rice Land Co. (Tex. Civ. App.) 253 S. W. 916. We do not deem it necessary to here discuss these cases in detail. They do not vary the general rules above announced. Certainly, as stated in some of the cases cited, a continued concealment of a fraud by a party who perpetrates it would toll the statute of limitation. But it does not follow from this that the statute of limitation begins to run immediately upon the perpetration of a fraud unless the perpetrator continues to mislead or deceive his victim. Likewise, where a party's cause of action arose out of a legitimate transaction, not tainted with fraud, in order to prevent limitation running against him, the injured party must show either that his cause of action had been concealed from him after it arose, or that he had been induced by deceit, concealment, or fraud not to bring his suit thereon within the time prescribed by law. Such in effect is the holding in most of the cases cited by appellant. Such a rule, however, has no application in the instant case. It is not denied that Moore was misled to his injury, but appellant seeks to relieve himself from his fraud through a plea of limitation. And the chief question here raised is, Did Moore, after the date of the transaction in which he was deceived use such diligence as a reasonably prudent person should have used under the circumstances to discover the fraud practiced upon him? If under the pleadings or the evidence it conclusively appears that he was in possession of such facts or information as would, if followed, have put a reasonably prudent person upon notice of such fraud, then as a matter of law he is guilty of negligence and the statute of limitation would run against his cause of action from such time as he should have discovered the fraud. In such case diligence becomes a question of law to be determined by the court. Otherwise it is one of fact to be determined as other issues of fact. In the instant case the appellee had, we think, alleged facts and circumstances sufficient to take that question to the jury.

Appellant in his third and fifth propositions contends that, not only does the proof show lack of diligence on the part of Moore to discover the fraud, but that it conclusively shows that he was negligent in not doing so within such time that his cause of action was barred by the statute of two years limitation before he filed his suit.

[6] It is not disputed that the 8 sections pointed out to Moore and inspected by him were level grazing land, unfenced and situated within a 50 or 60 section pasture, known as the Ed. Jones pasture. Nor is it denied that the land actually conveyed by Carver to Moore was located several miles from the land pointed out; that practically none of it was level; that practically all of it was on top of rocky mountains so rough and rugged that the surveyor could not survey it except by triangulation; and that it was practically worthless. Nor is it disputed that the land shown Moore was in fact owned by Ed. Jones under deeds duly recorded in Culberson county, and was being used by him at the time Moore inspected it. Appellant contends that on the question of diligence the case must be treated as though Carver did actually convey to Moore the land inspected by him. And so treating it appellant insists (1) that possession by Jones of the land inspected for a period of nearly 6 years after the transaction charged Moore with constructive notice of Jones' title and right of possession; and (2) that, regardless of such notice, Moore could not by proper diligence ignore Jones' possession for that period of time. The general rule is that possession of real estate is prima facie evidence of ownership and notice to all the world of the nature of possessor's title. This rule seems well settled in Texas, and, as stated by Judge Gaines in Collum v Sanger Bros., 98 Tex. 165, 82 S. W. 459, 83 S. W. 184, where land is occupied by another it is the duty of a purchaser to go to the occupant and ascertain the nature and extent of his claim.

[7-10] There is no contest here, however, as to title, and none between Moore and Jones. The title to the land actually conveyed Moore is not questioned. If he had examined the records of the lands described in his deed, he would have found no adverse claim thereto in Jones. Moore also had a right to rely on Carver's representations as to the location of the land as true. Stone v. Burns (Tex. Civ. App.) 200 S. W. 1121. And on the question of diligence we must consider Moore's conduct with reference to this land from his standpoint, not from that of Jones. The land shown him was not fenced, but merely located within a large pasture of some 50 or more sections. Jones lived on another 60-section ranch some 15 or 20 miles away. It was a common custom in that section of the state for lands owned by nonresidents to be inclosed in these large pastures and used by the owners of the surrounding lands without either leasing them or claiming any interest in them. If the lands conveyed to Moore had been located where Carver's agent pointed them out as being, there being more than 5,000 acres, and not being separately inclosed by a fence, Jones' possession could not, under articles 5677 and 5678, R. S. 1911, have been adverse to the title of Moore thereto. If Carver had owned the land pointed out to Moore, the fact that Jones had it included, along with other lands which he did not own, in a 50-section pasture, all under one fence, was not such possession thereof as existed or was

contemplated as constituting notice in the cases cited by appellant. None of the cases cited involved the question in issue here, or the application of articles 5677 and 5678, R. S. 1911. Jones did not have this land under separate fence, which was required to make his possession adverse, was not actually on the ground, had made no improvements thereon, was not cultivating any portion of the land, nor doing anything else to indicate any adverse possession if in fact Carver had owned it. Under such circumstances the same amount of inquiry and circumspection would not be required of Moore in order to constitute diligence as would have been required in case of small tracts or of lands in more populous portions of the state. We are not prepared, therefore, to say that, as a matter of law, under all the evidence introduced, Moore was guilty of such negligence in his delay in discovering the fraud as would set in operation the statute of limitation against him prior to June, 1923. That being a question of fact, and having been submitted to jury, and there being evidence to sustain such findings we will not disturb them.

[11] Nor did the lease of the land by Moore to Powell in January, 1920, constitute notice, or charge him with knowledge of where his land was actually located. The testimony shows that he leased it through an agent who lived in Culberson county, thought he was leasing the land shown him, and that Powell himself did not know at the time just where the land was situated. There was no relationship of principal and agent between Moore and Powell, but only of landlord and tenant, and no facts upon which constructive notice to Moore could be predicated.

By his sixth proposition appellant contends that he was entitled to a peremptory instruction for the reason that appellee wholly failed to prove the market value of the lands conveyed to him in Culberson county. And by his seventh and eighth propositions he complains of the testimony of the witness Owens as to the market value of the Culberson county land, on the ground that Owens did not qualify as being acquainted with the market value of these lands at the time.

[12] The measure of damages in case of fraud in the exchange of lands is the difference between the value of that parted with by the party defrauded and the value of that received by him in such exchange. Rea v. Luse (Tex. Com. App.) 231 S. W. 310; George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann Cas. 456; Vogt v Smalley (Tex. Com. App.) 210 S. W. 511. It was necessary then to prove the values of the respective lands in order to sustain a recovery.

[13] There may be some doubt as to whether the witness Owens was qualified under his own admissions to testify as to the market value of the Culberson county lands. But the fact that this land was situated in a semiarid, sparsely settled, and distant portion of the state, where only large ranches are found, and there is, of necessity, no active or well-known real estate market, requires a liberal application of the rule as to qualification of a witness on market value. The witness Owens had, however, lived in Culberson county since 1881, was county surveyor, and helped survey the land in question. Though he stated upon cross-examination that he did not know of his own knowledge what this character of land sold for in 1917, he stated that he had acquired information as to values of lands in that county by coming in contact with those who had bought and talking with them, and also from knowing the uses to which such lands were put and what their value for such uses was. This might not have been sufficient to qualify the witness as to the market value of lands in highly developed agricultural sections, where there is an active market and values are reasonably stable and fixed, but under all the circumstances of this case we think Owens' testimony admissible. The rule as stated by Chief Justice Key in Rotan Grocery Co. v. Jackson (Tex. Civ. App.) 153 S. W. 687, would we think apply to Owens' testimony and render it competent here:

"It is not denied that, in many cases, testimony as to value is. to a large extent, a matter of opinion; but, when such is the case, the witness should be required to disclose a knowledge of such facts as would entitle him to give an opinion that would be worth more than the opinion of the jurors."

[14-17] But, if we be wrong as to this, appellant's assignments must be overruled for another reason. The evidence disclosed that out of the 5,120 acres only about 200 or 300 acres were at all level, and that these were situated where a canyon widened out into a valley and subject to overflow. The rest of the land was almost entirely on rugged precipitous mountains, without water, and, according to three or four witnesses, was worthless. Appellee, in his petition, pleaded that said lands were in the heart of the Delaware Mountains in Culberson county, and that they were "wholly worthless." We think the proof discloses that their character and location were such that under the circumstances no market value could have been proven. It they had no ascertainable market value, their intrinsic value must be looked to. This could be determined by their character, location, use, availability, rental value, and such other facts and circumstances as would influence a person buying such lands in arriving at their value. See G., H. & S. H. Ry. Co. v. Davis, 1 White & W. Civ. Cas. Ct. App. § 147, p. 58; Peden Iron & Steel Co. v. Jenkins (Tex. Civ. App.) 203 S. W. 180. One witness testified that they might be used for a goat ranch; two that they were not worth

anything; three that there was no use to which they could be put; and one that they were "not worth 15 cents an acre." The jury found them to be worth $1,500. It is true that this value was found in answer to a question as to what was the market value, but no proper objection is shown by the record to have been made to this question before the charge was submitted to the jury, and, in the absence of such objection, appellant cannot now complain that market value instead of intrinsic value was submitted. See M., K. & T. v. Churchill (Tex. Com. App.) 213 S. W. 253. These assignments are therefore overruled.

[18-20] Appellant's ninth and tenth propositions, based on his tenth assignment of error, relate to special issue No. 17 submitted to the jury. The form in which this issue was submitted was as follows:

"Special Issue No. 17: Do you find from the evidence that the plaintiff, T. T. Moore, discovered, or by the exercise of reasonable diligence on his part could have discovered, before the expiration of two years from the date of the consummation of the exchange of lands with O. B. Carver, that the lands actually conveyed to him were not the same lands inspected by him? Let your answer be 'Yes' or 'No.' Answer: 'No.' "

Appellant's purported objection to this issue does not complain of the form of it, nor that it was erroneously stated. The record likewise fails to show that his objection was ever presented to the court below. In this condition of the record we cannot consider it. Railway Co. v Churchill, supra; Railway Co. v. Bartek (Tex. Com. App.) 213 S. W. 603; Traction Co. v. Rogan (Tex. Civ. App.) 199 S. W. 1135. Appellant insists, however, that the error is apparent upon its face and fundamental.

Appellant pleaded both the two and four year statutes of limitation as a defense. The above is the only issue submitting the question of limitation to the jury. The two-year statute clearly applies in this case, and the issue should have been so framed as to include all the time transpiring after the transaction up to within two years prior to the time suit was filed. Under the facts of this case this would have been practically four years after the transaction involved, which occurred September 14, 1917, instead of two, as limited in the question, since suit was not filed until September 4, 1923. Is appellant in a position, however. to complain? We think not. He made no proper objection to the issue as submitted. He made no request for a proper submission of this issue, though limitation was pleaded by him as a defense and was relied upon almost wholly to defeat appellee's recovery. It is not denied that Moore had been deceived, that he acted in good faith, and was injured thereby. It is immaterial whether Carver knew he was defrauding Moore, or intended to do so. The result is the same. It is not disputed that Moore was shown one piece of land and conveyed another of much less value. Limitation does not begin to run, in cases of fraud, from the date of the fraud, but from the time it was, or should have been, discovered. If the fraud be established, as was clearly done in the instant case, the appellant was liable in damages, unless his plea of limitation, which is a defense that must be pleaded before it can be availed of at all, is established. Having failed either to object to the improper form in which this issue was attempted to be submitted, or to request in writing the submission thereof in proper form, he will be held to have waived his objection thereto, and, there being evidence to support a finding that Moore was not guilty of such lack of diligence as to set in operation against him the statute of limitation, it will be presumed that the court found thereon in such manner as to support his judgment. See article 1985, Vernon's Sayles' Statutes 1914, and annotations thereunder; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1133; Smith v. Smith (Tex. Civ. App.) 213 S. W. 273; First National Bank v. Rush (Tex. Com. App.) 246 S. W. 349; Hill v. Hill (Tex. Civ. App.) 193 S. W. 726.

[21] Appellant's eighth assignment of error is submitted as his eleventh and last proposition. It was based upon appellant's objection to the submission to the jury of special issues Nos. 10, 11, and 12. The record fails to disclose, however, that this objection was ever presented to the trial court. Hence it cannot be considered here. See Railway Co. v. Dickey, 108 Tex. 126, 187 S. W. 184, and cases supra.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.