MARGARET H. BUSTEED *vs.* CAMBRIDGE SAVINGS BANK, HELEN BRODHEAD, executrix, intervener.

Middlesex.   November 14, 1939. — April 29, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX & RONAN, JJ.

*Equity Pleading and Practice,* Master: findings; Appeal. *Gift. Savings Bank. Words,* "Have," "Keep."

Upon an appeal from a final decree in a suit in equity based upon conclusions by a master drawn solely from the subsidiary findings stated in the report, this court is not bound by such conclusions but may draw its own conclusions from such subsidiary facts.

Facts showing the circumstances of a delivery to a donee by the owner of a savings bank deposit of a sealed envelope, upon which she had written the name of the donee and which contained the bank book representing the deposit, with the oral statement, "this is my bank book . . . I want you to keep this . . . I want you to have this," and acceptance of the envelope by the donee, required conclusions that a present gift of the deposit was intended and that there had been an effective transfer of it.

BILL IN EQUITY, filed in the Superior Court on August 7, 1935.

A final decree dismissing the bill was entered by order of *F. T. Hammond,* J.

The case was argued at the sitting of the court in November, 1939, before *Field,* C.J., *Donahue, Lummus, Dolan,* &

*Ronan,* JJ., and afterwards was submitted on briefs to all the Justices.

*G. P. Wardner,* (*C. L. Myette* with him,) for the plaintiff.

*Joseph P. Sullivan,* for the intervener.

DOLAN, J. This is a suit in equity in which the plaintiff seeks to compel the defendant to pay to her a savings deposit standing upon the books of the defendant in the name of Mary B. Ames, late of Conway in the State of New Hampshire, deceased, upon the surrender by the plaintiff of the book of deposit which is held by her and which she claims as a gift from the deceased. The executrix of the will of the deceased was permitted to intervene as a party claimant. The defendant bank has no interest in the matter except that of a stakeholder.

The case was referred to a master. Material facts found by him are in substance as follows: The plaintiff is the wife of a nephew of the deceased, and had known her since 1908 or 1909. After the plaintiff's marriage, in 1911, a very cordial relationship existed between the plaintiff and the deceased to the time of the latter's death. At the time of the filing of the answer of the defendant bank the deposit in question amounted to $2,563.70.

The deceased died testate on January 26, 1935, at the age of about seventy-five years, at the home of her niece, the intervener, in Manchester, Massachusetts. Under the terms of her will, which is dated October 16, 1934, she made bequests of $300 each to her brother Robert Busteed and his wife Nellie, to Henry Busteed, a nephew (the husband of the plaintiff), to Mabel Flannery, a niece, and to her niece the intervener, who is the daughter of the brother Robert. Another nephew of the deceased was given a legacy of $200. The will provided that the real estate in Kearsarge (Conway), New Hampshire, owned by the deceased should be sold and its proceeds equally divided between Nellie Busteed (the deceased's sister-in-law) and the niece Mabel Flannery. The residue of the estate was also left to them.

The will of the deceased was allowed on May 7, 1935. Her estate consisted of the real estate before referred to

"valued at about $3000, and about $450 in money in a bank, exclusive of the bank . . . [deposit] in controversy." In November, 1934, the deceased "By a postcard dated November 16, 1934," wrote the plaintiff from "Manchester Mass." She complained of having been in poor health and concluded thus: "Sometime if you can come down *alone* I'd like to see you." When this postcard was written the deceased was living at the home of her niece, the intervener. The occupants of the home were the deceased's brother and his wife, and the intervener and her husband. The plaintiff called on the deceased on the twelfth and nineteenth days of the December following. On December 19 the deceased said to the plaintiff: "Margaret, this is my bank book. My plans are all wrong. . . . My plans are all wrong. I want you to keep this and don't let anyone see this. . . . I want you to have this." She put the book in the plaintiff's hand and said: "Put it in your bag before Nell [her sister-in-law] comes up." The plaintiff put it in her bag. The master found that when this conversation took place the deceased "did hand to the plaintiff the envelope containing the bank book." The envelope was sealed and the plaintiff's name was indorsed thereon in the handwriting of the deceased. During the lifetime of the deceased the plaintiff retained the envelope containing the bank book in the sealed condition in which it had been handed to her. The plaintiff saw the deceased "after Christmas," and also shortly after January 4, 1935. Nothing was "said between them . . . as to the bank book" on either of these occasions.

By a letter postmarked January 31, 1935, the intervener gave the plaintiff a résumé of the provisions of the will of the deceased, and stated in part that "All books, papers, etc. belonging to . . . [the deceased] will have to be turned over to me to be inventoried and the bequests I do not think according to law will be paid for at least nine months . . . ." Upon the receipt of this letter the plaintiff opened the envelope containing the bank book, which she examined. There was no signed order accompanying the bank book. On February 4, 1935, the plaintiff replied

to the letter, and so far as material said: "The last time I saw Aunty she wanted to give me something which was in her bag, but it distressed me so to see her trying to talk I just soothed her and said, 'Don't tell me now wait until I come again,' what it was I do not know, you or your mother must have found it and I hope you will let me have it. . . . P.S.    What Aunty entrusted to me I will give rather turn in at the appointed time." When the plaintiff wrote this letter she had "no property belonging to Mrs. Ames, other than this bank book and the reference is solely to the bank book." Her explanation of this statement was that she had in mind "that she would have to turn the book in to the bank . . . and that it was not until she went to the bank that she learned for the first time that she could not draw the money without a written order from . . . [the deceased]." Under date of February 7, 1935, the plaintiff wrote Mabel Flannery, one of the residuary devisees and legatees under the will, as follows: "You, Henry and Stephen and I are the only ones (besides the bank of course) who know the amount Aunty left. As she did not want any one to know, we must not talk about it, that is tell any one else."

These findings are followed by a summary made by the master, in which he recites briefly the salient facts already found by him, and states that the inference he drew from all the facts was that the deceased "believed that if it were necessary the plaintiff would return the bank book or such portion of the account as . . . [she (the deceased)] might ask for, and that if there was no occasion for the return of the book the plaintiff would have the benefit of the account." The master further states in substance that, notwithstanding the postscript on the plaintiff's letter, he was of opinion that, if the deceased should be in need of funds to carry her through a long illness, she relied upon the plaintiff to meet that contingency if it arose, and if it did not, that she wanted the plaintiff to have the benefit of the account. In conclusion the master found that the deceased did not intend to give the plaintiff "a present, irrevocable interest and title in the bank book and in the right it repre-

sented," that the deceased "retained the title, control and disposition of the fund," that she "intended the plaintiff to have the fund represented by the bank book after . . . [the deceased's] death," and that "it was a gift [intended] to take effect only after . . . [her] death."

An interlocutory decree was entered overruling the plaintiff's exceptions to the master's report and confirming the report. The plaintiff appealed from this decree, and from the final decree thereafter entered adjudging that the deposit in question was assets of the estate of the deceased and ordering the plaintiff to deliver to the intervener, as she is executrix of the will of the deceased, the savings bank book representing the deposit.

Since the master's report shows on its face that his inferences and ultimate findings are based solely on the subsidiary facts set forth therein, we are in no way bound by his inferences or conclusions, but must take the facts found and may draw our own inferences and conclusions from them. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435, and cases cited.

The conversation between the deceased and the plaintiff has been found as a fact. It is also a fact that this was the only conversation about the bank book, and likewise a fact that at the time of this conversation the deceased delivered the book of deposit to the plaintiff. These facts so found are not merely evidence to be weighed by us, but on the contrary must be taken as true in every detail.

The language used by the deceased goes beyond an entrusting of mere custody of the bank book to the plaintiff. We interpret the statements of the deceased that her plans were all wrong to relate not to any plans she had made as to the custody of her bank book but to the disposition of her estate which she had provided for in her will. The deceased said to the plaintiff: "I want you to keep this . . . I want you to have this." Nothing was said about any reservation by the deceased of a right to withdraw interest on the deposit, or any part or the whole of the deposit during her life. Nothing was said about any reliance by the deceased upon the plaintiff to use any part

or the whole of the deposit to carry the deceased through a long illness if that "contingency . . . arose." The postscript on the plaintiff's letter of February 4 and her letter of February 7 to Mabel Flannery were circumstances to be weighed by the master in determining what credit he should give to the plaintiff's testimony as to the conversation that took place when the book of deposit was delivered to her. But the master accepted the plaintiff's version of that conversation in its entirety as a fact, and the intent of the deceased must be determined from her words and conduct as found by the master.

The words "have" and "keep" are frequently used synonymously. See *Mangan* v. *Howard*, 238 Mass. 1. The word "have" has been defined to mean "to keep," "to hold in possession," "to own." When applied to property it imports ownership. *Chicago Home for Girls* v. *Carr*, 300 Ill. 478, 483. In *Robinson* v. *Powell*, 210 Penn. St. 232, at page 239, the court said: "The deposit . . . to the credit of appellee, the delivery of the bank book and the unqualified declaration of decedent to appellee . . . that the money was for her 'to keep,' clearly evidence an absolute gift to her." See also *Cryan's Estate*, 301 Penn. St. 386, 399. In *Cheney* v. *Plumb*, 79 Wis. 602, at page 605, it is said: ". . . the word 'keep' is often used by the common people to express a gift." See also *Deans* v. *Gay*, 132 N. C. 227, 230. We think that the deceased used the words "to keep" and "to have" in the same and not in a different sense, and that her language was suited to an intent on her part to make a present gift of the deposit to the plaintiff, accompanied, as her words were, by the delivery of the book representing the deposit to the plaintiff, and its acceptance by her. See *Wade* v. *Smith*, 213 Mass. 34, 35; *Moore* v. *O'Hare*, 224 Mass. 283, 285; *Mangan* v. *Howard*, 238 Mass. 1, 6. See also *Scott* v. *Berkshire County Savings Bank*, 140 Mass. 157, 166; *Kentfield* v. *Shelburne Falls Savings Bank*, 273 Mass. 548, 550; *O'Hara* v. *O'Hara*, 291 Mass. 75, 78. The postcard written by the deceased prior to the transaction in question, in which she asked the plaintiff to come and see her "*alone*," and the further facts

that she had prepared the sealed envelope that contained the bank book and had indorsed the plaintiff's name on the envelope, give evidence that the deceased was acting after deliberation.

It is settled that the delivery of a savings bank book by the owner thereof with the intention of making a gift to the donee constitutes an effective transfer of the deposit represented thereby when accepted by the donee. *Bone* v. *Holmes*, 195 Mass. 495. *Mangan* v. *Howard*, 238 Mass. 1, 6. *Brodrick* v. *O'Connor*, 271 Mass. 240, 246. The facts found by the master lead a majority of the court to the conclusion that the deceased intended and made a present gift of the deposit involved to the plaintiff, and that there was an effective transfer to her of the title thereto.

The final decree entered in the court below is reversed, and instead thereof a decree is to be entered that the savings deposit in question is the property of the plaintiff and directing the defendant to pay the deposit to her with any accumulations thereon upon demand and presentation by her of the book of deposit. Costs are to be allowed to the defendant.

*Ordered accordingly.*