**VIDUARRI et al. v. BRUNI et al.**

**No. 11372.**

Court of Civil Appeals of Texas. San Antonio.

Jan. 5, 1944.

Rehearing. Denied Feb. 9, 1944.

Writ of Error Denied April 19, 1944.

Mann & Mann and E. J. Dryden, all of Laredo, for appellants.

Hicks & Hicks, Yale Hicks, and Horace C. Hall, all of Laredo, for appellees.

NORVELL, Justice.

This is the second appeal in this case. The opinions of the Supreme Court and this Court upon the former appeal are reported in 140 Tex. 138, 166 S.W.2d 81, and 154 S.W.2d 498, respectively, and we refer to them for a more detailed statement of the case. Upon this appeal, the Bruni claimants are again the appellees while Lucio Viduarri and others are the appellants. The judgment of the trial court awarded to appellees the title and possession of eleven tracts of land situated in the Corralitos and Dolores subdivisions of the Borrego Grant, situated in Webb and Zapata Counties.

It was conceded by appellants in the court below that the appellees possessed a record title to a nine-tenths undivided interest in the lands here involved. The appellees contended that they were entitled to judgment for all of the lands sued for, including the undivided one-tenth interest claimed by appellants under the ten-year statute of limitations, Art. 5510, Vernon's Ann.Civ.Stats. Appellees also asserted that they were entitled to judgment under the doctrine of presumed grant or deed. Issues upon both of these theories of recovery were submitted to the jury and answered favorably to appellees.

Many of appellants' points assert that the evidence is insufficient in law and in fact to support certain of the jury's findings. It is contended that the record of the evidence differs from that of the former trial and appellants particularly call our attention to certain statements of parties or their predecessors in title which were not in evidence upon the first trial of the case. These statements consist of certain testimony of A. M. Bruni and Mrs. C. H. Bruni, his widow, given in connection with trials of lawsuits in 1913, 1918 and 1936, affecting lands in the Borrego grant. We have examined this evidence, as well as the alleged admissions of A. H. Bruni, son of A. M. Bruni, and J. C. Martin, son-in-law of A. M. Bruni, both of whom were executors and trustees named in the will of A. M. Bruni, deceased. None of these statements are such as would preclude a recovery by appellees as a matter of law, but simply presented matters for the jury to weigh in connection with the other evidence in the case bearing upon the issues submitted to it.

It seems to us that the evidence upon this trial is substantially the same as that

adduced at the former trial, and we again hold that the case was one for the jury. Appellants' points Nos. 8, 9, 10, 11 and 16 are overruled.

We are also of the opinion that appellants' points fail to disclose that the trial judge committed reversible error in his rulings relating to the exclusion of evidence or by his rulings in connection with objections made to the argument of appellees' counsel before the jury.

Appellants sought to introduce in evidence a list of deeds and title instruments which appeared in the brief of appellees filed in this Court upon the former appeal. It seems, however, that all instruments mentioned in the list were introduced in evidence upon the trial. We fail to see how or wherein this list prepared by appellees' attorneys adds to or mitigates against appellants' argument that A. M. Bruni, or those claiming under him, recognized an outstanding superior claim of title, as opposed to appellees' contention that Bruni and the Bruni claimants, after 1901, procured these deeds, etc., in an effort to "buy peace." We don't think this list prepared for the purpose of presenting an argument or contention in this Court can properly be construed as an admission, and are also of the opinion that appellants were not prejudiced by the trial judge's ruling.

Appellees' counsel in commenting upon certain evidence of the testimony of A. M. Bruni, given in a prior case involving lands in the Borrego grant, pointed out that appellants had offered only a part of Bruni's testimony. The trial court in ruling upon an objection by appellants instructed the jury that appellants could only introduce that part of Bruni's testimony which could be construed as an admission against interest. Appellants then requested the court to instruct the jury that appellees could have introduced any part of Bruni's testimony given at former trials in explanation of the part thereof introduced by appellants had they desired to do so. This instruction the trial court refused to give. We think this additional instruction was unnecessary and the trial court was correct in its ruling. Appellants' points Nos. 2, 3 and 13 are overruled.

By their point No. 12, appellants assert that the trial court erred in failing to quash the jury panel. In support thereof appellants have brought forward in the transcript a lengthy bill of exceptions, which we have carefully considered. The jury panel was chosen from a wheel in accordance with the provisions of Article 2094 et seq., Vernon's Ann.Stats. In the bill of exceptions the trial court certified that "the committee that drew 100 members from the wheel to constitute the jury panel for the trial of this case was composed of R. W. Carrejo, Deputy Sheriff of J. C. Martin, Sheriff, who is a party to the suit (Carrejo not being a party to the suit), Blas Garcia, a Deputy District Clerk (the District Clerk being J. C. Martin, Jr., a son of the Sheriff, the District Clerk not being a party to the suit), and myself, the District Judge and that the jury panel was regularly drawn in conformity with the statute, that the names appearing on the jury panel were those drawn out of the wheel and that the members of the jury panel who appeared in court were members of the panel as drawn from the wheel."

The bill further recited that "upon the hearing of the motion to quash the jury panel, the Court inquired of defendants' attorneys if they contended in their motion, or if they had any evidence to offer to show, that there had been any corruption in connection with the jury panel or effort to tamper with it, and they said no, they made no such contention."

The bill of exceptions negatives the existence of any actual prejudice to appellants. The trial court excused numerous members of the panel upon suggestions of appellants, and it does not appear that appellants were forced to take an objectionable juror. The sole question therefore presented is whether or not a jury selected from a jury panel taken from a wheel in accordance with applicable statutory provisions is disqualified to sit in a case in which the sheriff of the county is a party. The selection of names from the wheel in accordance with the statutory directions is largely mechanical, and there is no contention that the statutory safeguards were not fully complied with in this case. The statute does not provide for an alternative method of selection of a jury panel for cases in which the sheriff is a party. We therefore conclude that neither the jury panel nor the petit jury selected from the panel were disqualified to sit in this case. The bill fails to disclose a reversible error. Appellants' twelfth point is overruled.

In addition to the contention that the evidence is insufficient to support the judgment (hereinabove disposed of), appellants

contend that the judgment can not be supported by the ten-year statute of limitations for two additional reasons.

First, it is asserted that the ten-year statute is not applicable to nine of the eleven tracts involved for the reason that the fences or enclosures of nine of the tracts include more than 5000 acres. Our attention is particularly directed to Article 5512, Vernon's Ann.Civ.Stats.

 It is readily apparent that Article 5512, as well as Article 5511, relates to the question of notice under the ten-year statute, Article 5510. These articles have application to smaller tracts of land surrounded by or adjacent to larger tracts. They do not have reference to undivided interests in land, as such an interest can not be segregated by a fence. Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769. As to the purpose of the enactment of the legislation of 1891, from which Articles 5511 and 5512 are taken, see Howard's Unknown Heirs v. Skolant, Tex.Civ.App., 162 S.W. 978; Carver v. Moore, Tex.Civ.App., 275 S.W. 90, and 2 Tex.Jur. 98, § 51. The question of notice of adverse claim as against a co-tenant by one whose original entry was in recognition of the common title is fully discussed by the Supreme Court upon the former appeal. See 140 Tex. 138, 147, 166 S.W.2d 81, 87. Appellants' first point is overruled.

Second, appellants assert that the issue under the ten-year statute was improperly submitted to the jury.

The trial court's submission was as follows:

"In connection with Special Issue No. 1, you are instructed that A. M. Bruni by the purchase of an undivided interest of 38,000 acres of land more or less in the Borrego Grant from Trinidad Cuellar de Vidaurri, et al, the surviving wife and children of Lauriano Vidaurri described in the deed dated August 3, 1885, became a cotenant or tenant in common of such of the other heirs of Manuela Borrego de Vidaurri, whose interests he had not purchased, and his possession would be presumed to have been in the right of the common title and not adverse to his cotenants unless and until he repudiated the title of his cotenants to any interest in the particular tracts of land in controversy and held the same adversely to the title of said cotenants, if you find he did so, and until he gave notice of such repudiation and adverse claim, if any, to said cotenants. Cotenancy or tenancy in common means where two or more parties own undivided interests in the same tract or tracts of land.

"It was not necessary for the said A. M. Bruni and plaintiffs to give actual notice to said cotenants of such repudiation and adverse holding if any, but such notice may be presumed by the jury to have been brought home to the cotenants if the jury find from a preponderance of the evidence that the adverse occupancy, if any, and claim of title, if any, on the part of the said A. M. Bruni and plaintiffs was open, notorious, exclusive and unequivocal for such a length of time as to be inconsistent with the existence of title in such cotenants and of such notoriety as to constitute notice to the defendants and those under whom they claim title; the inference of notice being one of fact to be determined by the jury.

"In connection with Special Issue No. 1, you are instructed that if you believe from a preponderance of the evidence that at the times after 1901, when Bruni and those holding under him secured deeds from some of the heirs of Manuela Borrego de Vidaurri and persons claiming under them, they were merely seeking to quiet their possession of said lands or protect themselves from adverse litigation with reference thereto, such purchases would not constitute recognition that the heirs of Manuela Vidaurri from whom they had not acquired title, had valid interests in the lands in controversy.

"On the other hand, if by making such purchases Bruni and those holding under him were not merely seeking to quiet their possession or to avoid litigation with reference to said lands, but were buying what they conceded to be valid interests therein, then such purchases would constitute a recognition of valid interests in the other heirs of Manuela Vidaurri from whom they had not acquired title.

"You are further instructed in this connection, that if Bruni and those holding under him after 1901, recognized valid interests in the lands in controversy to be in some of the heirs of Manuela Vidaurri and those holding under them, Bruni's and plaintiff's possession would not be adverse to such defendants, heirs of Manuela Vidaurri, from whom they had not acquired title and those holding under them so long as such recognition continued.

"By peaceable possession is meant continuous possession, uninterrupted by any adverse suit to recover the estate.

"By adverse possession is meant actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

"In the light of the foregoing instructions, you will answer the following Special Issue No. 1.

"Special Issue No. 1

"Do you find from a preponderance of the evidence that for any period of ten consecutive years prior to April 15, 1935, and subsequent to the year 1901, the plaintiffs or those under whom they claim title had peaceable and adverse possession of any one or more of the eleven tracts of land described in plaintiffs' petition, cultivating, using or enjoying the same, said tracts being known as follows:

| | | | |
|---|---|---|---|
| Calvillo | Villastrigo | Tule | Reyna |
| Salteador | Burritas | Jaral | Survey 1292 |
| Capones | Cabezon | La Perla | |

"Answer 'Yes' or 'No.'

"We, the Jury, answer: Yes.

"And if you answer 'Yes' to Special Issue No. 1, then in that event only, name the particular tract or tracts of land which you find were so held.

"We, the Jury, answer: Calvillo, Salteador, Capones, Villastrigo, Burritas, Cabezon, Tule, Jaral, La Perla, Reyna Survey 1292."

By their fourth and fifth points appellants contend that the trial court erred in "refusing to submit to the jury issues on actual and constructive notice of adverse claim" and in "submitting unnecessary and prejudicial instructions in connection with special issue No. 1." In the course of the argument under these points, appellants assert that the special instruction above set out is on the weight of the evidence. In our opinion, however, this particular contention is lacking in substance and is not well taken.

The points presented (Nos. 4 and 5) involve a construction of that part of Rule 277, Texas Rules of Civil Procedure, which reads as follows:

"* * * in submitting special issues the court shall submit such (explanations) explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict upon such issues, and in such instances the charge shall not be subject to the objection that it is a general charge."

Since the adoption of the rule above quoted from, it is not reversible error for a trial court to give an instruction in the nature of a general charge in a special issue case, provided such charge or instruction is *"necessary to enable the jury to properly pass upon and render a verdict"* upon the issues submitted to it.

It seems readily apparent that the submission of Special Issue No. 1 by itself would not have constituted a comprehensive submission of the question of limitation under the facts of this case. A. M. Bruni's original entry was made as a tenant in common, and the question of adverse nature of his holdings is further complicated by the acquisition of the Bruni deeds after 1901. While the special issue submitted in the main followed the wording of the ten-year statute and may be said to embrace the controlling fact consideration upon this phase of the case, it is clear that something else was necessary to enable the jury to render an intelligent verdict or finding. The trial court sought to supply this obvious deficiency by the use of special instructions. Appellants contend that the trial court should have submitted additional special issues instead of using the special instructions. Appellants requested the court to submit some eight special issues in connection with the ten-year statute as follows:

"1. Do you find from a preponderance of the evidence that between January 1, 1901, and the date of his death, A. M. Bruni was continuously claiming the land in controversy adversely to the defendants in this suit and those under whom they claim? * * *

"2. In the event you find that A. M. Bruni was not continuously claiming adverse possession during the entire period of time inquired about in preceding issue (and in that event only) but that he was claiming adversely during part of such time, then, from a preponderance of the evidence, state the period of time which you find that said A. M. Bruni was con-

tinuously claiming the land in controversy adversely to the defendants in this suit and those under whom they claim. * * *

"3. Do you find from a preponderance of the evidence that between the date of the death of A. M. Bruni and the date of her death, his widow, Mrs. C. H. Bruni, was continuously claiming the land in controversy adversely to the defendants in this suit and those under whom they claim? * * *

"4. Do you find from a preponderance of the evidence that between January 1, 1901, and date of his death, A. M. Bruni did not continuously recognize that the defendants herein, and those under whom they claim, owned undivided interests in the land involved in this suit? * * *

"5. In the event you find that A. M. Bruni did not continuously recognize that the defendants herein, and those under whom they claim, owned undivided interests in the land involved in this suit during all of the period of time inquired about in the preceding issue, (and in that event only) but that during part of such time he did recognize that the defendants herein, and those under whom they claim, owned undivided interests in the land involved in this suit, then, from a preponderance of the evidence, state the period or periods of time during which you find that said A. M. Bruni did recognize that the defendants herein, and those under whom they claim, owned undivided interests in the land involved in this suit. * * *

"6. Do you find from a preponderance of the evidence that the defendants herein, or those under whom they claim, at any time between January 1, 1901, and the filing of suit on April 15, 1935, knew that A. M. Bruni, Mrs. A. M. Bruni, and/or the plaintiffs, were claiming the land in controversy in this suit adverse to them? * * *

"7. Do you find from a preponderance of the evidence that A. M. Bruni, Mrs. A. M. Bruni, and the plaintiffs, at any time between January 1, 1901, and the filing of suit on April 15, 1935, asserted adverse possession, if any, to the property in controversy in this suit against the defendants and those under whom the defendants claim, such as was of such unequivocal notoriety that the defendants, and those under whom they claim, would be presumed to have notice of such adverse claim and possession? * * *

"8. Do you find from a preponderance of the evidence that A. M. Bruni did not offer to purchase the undivided interest or interests of one or more of the grantors in the various deeds in evidence into A. M. Bruni, executed between January 1, 1901, and the time of the death of the said A. M. Bruni? * * *"

█ It is perhaps possible that the limitation features of this case could have been submitted to the jury by the use of a number of separate issues, and that had such a method of submission been selected, it would not have been necessary to also submit certain of the explanatory instructions which were actually given by the trial court. However, we do not understand the rule to mean that simply because a theory of recovery or defense may be submitted by means of numerous special issues without explanatory instructions, it follows therefore that explanatory instructions are to be classed as "unnecessary" when given by a court in order to enable it to submit a theory to the jury upon a lesser number of special issues.

It seems that the expression "necessary to enable the jury to properly pass upon and render a verdict upon such issues" employed by the rule allows the trial judge some choice of method with reference to the submission of a theory of recovery or defense. It is clear that "the rule affords a greater latitude to the trial judge than did the Statute." Article 2189, Vernon's Ann.Civ.Stats., now repealed; Boaz v. White's Auto Stores, Tex.Sup., 172 S.W.2d 481.

█ It appears from the report of the case last cited that the trial court instructed the jury that appellant's truck driver was guilty of negligence as a matter of law. The Supreme Court held that the giving of this charge was reversible error, as it was not only prejudicial but wholly unnecessary to enable the jury to pass upon the issues actually submitted to it. The situation disclosed by the record before us is very different from that existing in Boaz v. White's Auto Stores. Here the instruction was "necessary" and in our opinion the method of submission employed by the trial court covering a rather involved fact situation was calculated to procure a more intelligent response from the jury than was the suggested method of appellants, employing as it did numerous special issues, many of which are evidentiary in nature. We approve the method of sub-

mission employed by the trial court, together with explanatory instructions given in connection therewith. Appellants' fourth and fifth points are overruled.

Appellants remaining points have reference to the method of submission employed by the trial court in connection with appellees' theory of recovery based upon the doctrine of presumed grant. Some complaint is also made of the argument of appellees' counsel in connection therewith. It would unduly lengthen this opinion to discuss these contentions in detail. Under our holdings in connection with the ten-year statute of limitations an affirmance of the trial court's judgment must be ordered. It is sufficient to say that the trial judge employed a somewhat similar method of submitting the doctrine of presumed grant to that employed by him in submitting the issue involving the ten-year statute of limitations. Certain special requested issues of appellees were also submitted. The doctrine of presumed grant as applied to the facts of this case was fully discussed by the Supreme Court in its opinion, and issues were submitted by the trial court in substantial conformity therewith. We overrule appellants' points Nos. 6, 7, 14, 15, 17, 18 and 19.

We have considered all of appellants' nineteen points and being of the opinion that none of them discloses a reversible error, an affirmance of the trial court's judgment is accordingly ordered.

Affirmed.