Vernette HARRIS et al., Appellants,

v.

Ethel STRAWBRIDGE et al., Appellees.

No. 13481.

Court of Civil Appeals of Texas.

Houston.

Dec. 3, 1959.

Rehearing Denied Dec. 23, 1959.

Second Motion Overruled Jan. 14, 1960.

Bell, Camp & Gwin, Bay City, E. C. Schroeder, Boone, Iowa, Price, Guinn, Veltmann & Skelton, Houston (Lawrence Gwin, Bay City, Barnet B. Skelton, Dee S. Osborne, Houston, of counsel), for appellants.

Joe Entzminger, John B. Letcher, Bay City, for appellees.

BELL, Chief Justice.

Ethel Strawbridge, the widow of Edward Strawbridge, filed suit to recover title to a 189 acre tract of land in Matagorda County. Suit was against appellants who were some of the heirs of Edward Strawbridge. There were other heirs of Jane Blades, sister of Edward Strawbridge, who were cited by publication who did not appear in the trial except through the attorney ad litem appointed by the court. Such defendants have not appealed. Appellants are the heirs of Matilda Turner, the sister of Edward Strawbridge.

The first count of plaintiff's petition is in the statutory form of trespass-to-try title with a claim for damages. Appellee also claimed title under the 3, 5 and 10 year statutes of limitation. Further, by a trial amendment, appellee sought to reform an alleged deed dated October 20, 1941, from Edward Strawbridge to her, contending that by mutual mistake the granting clause had been omitted. Too, she asserted the suit was to reform the alleged deed and to remove cloud from title.

Appellants, besides some exceptions not necessary to notice, plead not guilty, a general denial and that the four year statute of limitation was a bar to reformation of the deed.

A trial was had before a jury and the case was submitted on the issue as to whether appellee had title under the ten year statute of limitation. The jury answered favorably to appellee and the court entered judgment in her favor on this verdict.

It is necessary for clarity to at this point notice some of the facts. Edward Strawbridge and appellee, Ethel Strawbridge, married in 1935. Edward Strawbridge died in July, 1943. He and Mrs. Strawbridge lived in the State of Florida. They had no children. Edward Strawbridge left no children or their descendants surviving him. His mother and father predeceased him. All of Mr. Strawbridge's brothers and sisters predeceased him. Only his sisters, Matilda Turner and Jane Blades, left descendants, they all being made parties to this suit.

In 1928 Edward Strawbridge made a will when he lived in Platteville, Wisconsin, which contained a general revocation clause. By paragraph 2 of this will he left his homestead in the State of Florida, together with the furniture and furnishings, to his sister, Jane Blades. By paragraph 3 he gave Jane Blades a life estate in his 235 acre farm located in LaFayette County, Wisconsin. Also he gave her a life estate in mining rights in and under a six acre tract adjoining the farm. Then a life estate after the death of Jane Blades was given named nieces and nephews, and the remainder was to the Free Methodist Church of North America. By paragraph 4 the income from $2,000 was left to a niece, with remainder to the above named church. Then follow six paragraphs by which named persons were given bequests of money. Isabella Blades, his niece, was made executrix of his estate. This will contained a residuary clause, leaving the residue of his property wherever situated

to Jane Blades and her six children in equal shares.

On April 24, 1940, Edward Strawbridge left another will. This will named Ethel Strawbridge executrix. He devised all of his property located or having its situs in the State of Florida to Ethel Strawbridge. In paragraph "Three" of this will he provided as follows:

"In and by a Will made by me many years ago in Wisconsin and now in the hands of Kopp and Brunckhurst, Attorneys, in Platteville, Wisconsin, I made certain disposition of property owned by me in the State of Wisconsin. *I desire that the provisions of that will shall stand unrevoked so far as they affect the said property in Wisconsin.*" (Emphasis ours.)

This will contained no residuary clause.

These two instruments were both admitted to probate in the States of Wisconsin and Florida, as the last will and testament of Edward Strawbridge. They were not offered for probate in Texas, but were filed in the Deed Records of Matagorda County, as authorized by statute, V.A.T.S. Probate Code, § 96, as a muniment of title, in 1957.

■ On October 20, 1941, Edward Strawbridge executed the following instrument:

"State of Texas, County of Matagorda, know all men by these presents that I, Edward Strawbridge, of Escambia County, Florida, for and in consideration of One ($1.00) Dollar and other good and valuable considerations to me in hand paid by Ethel Strawbridge of the City of Pensacola, Escambia County, Florida, that certain property described as follows:

(Here follows a sufficient description of the land involved in this suit)

"To have and to hold the above described property, together with all and singular the rights appurtenances thereunto in anywise belonging unto the said Ethel Strawbridge, her heirs or assigns forever."

This instrument was properly signed and acknowledged. It was filed for record in the office of the County Clerk of Matagorda County by Ethel Strawbridge on December 10, 1942, and is recorded in the Deed Records in Volume 147, at page 283.

As we read the record, this instrument was first offered by appellee as a deed, and, upon objection by appellants that it was not a deed but was a void instrument since on its face it granted nothing, it violated the Statute of Frauds and the Statute of Conveyances, appellee stated it was offered, not as a deed, but as an instrument recorded in the Deed Records which gives constructive notice that Ethel Strawbridge was claiming the land the instrument described. We interpret this as an offer of the instrument as a sufficient deed under the five year statute of limitation and as a memorandum under the 10 year statute of limitation.

We have reached the conclusion that the case must be reversed and remanded because, as hereinafter discussed, we feel there was error in the submission of the case to the jury because we feel the Wisconsin will of Edward Strawbridge was revoked except as to the Wisconsin property and that, therefore, Edward Strawbridge died intestate as to the Texas land and appellee was a tenant in common with appellants.

By Cross-Point appellee has assigned as error the action of the court in excluding the instrument of October 20, 1941, from Edward Strawbridge to appellee. We have concluded that the court did err because we think the instrument is a deed. We discuss our holding in this regard first because on retrial such holding may well be determinative of the law suit without regard to the question of limitation.

■ The instrument does not of course conform to the form of a deed set out by Article 1292, R.C.S.1925. However,

such form is not a legal requirement to an effective conveyance. In fact, that statute, after setting out a form of conveyance, provides that the substance of the form will be sufficient as a conveyance. At common law significance was attached to certain technical words and to the formal parts of a deed. The premises, which included the granting clause, the naming of the grantor and grantee, the expression of consideration, and a description of the land conveyed, were looked to to supply the grantor, grantee, the consideration, the operative words or words of grant and the description and these could not be supplied by resort to other portions of the deed. The habendum clause served to define the estate granted. It is no longer necessary to have these formal parts to have a good deed, nor is it necessary to use technical words. Now we look to the whole of an instrument to determine the intention of the parties. If from the whole instrument we can ascertain a grantor and a grantee and there are operative words or words of grant showing an intention by the grantor to convey title to land which is sufficiently described to the grantee, and it is signed and acknowledged by the grantor, it is a deed. Harlowe v. Hudgins, 84 Tex. 107, 19 S.W. 364; Baker v. Westcott, 73 Tex. 129, 11 S.W. 157; Young v. Rudd, Tex. Civ.App., 226 S.W.2d 469, ref., n. r. e.; Devlin on Real Estate, 3rd Edition, Vol. 1, § 174.

■ The instrument before us sufficiently names a grantor and grantee. While Edward Strawbridge is not specifically called a grantor, there can be no question that he is such because it is recited that Ethel Strawbridge has paid him a consideration. The grantor is the person who normally receives the consideration. Too, he signed and acknowledged the instrument, and Ethel Strawbridge, the only other person named in the instrument, appears in the habendum clause as the person who is "to have and to hold" the property. This is sufficient to show she is the grantee. Harlowe v. Hudgins, supra, and Newton v. McKay, 29 Mich. 1.

The vigorous contention of appellants is that there are no words of grant anywhere in the deed. They contend that the words "to have and to hold" used in the habendum clause are not sufficient.

We hold that the habendum clause reading *"To have and to hold the above described property,* together with all and singular the rights and appurtenances thereunto in anywise belonging, *unto the said Ethel Strawbridge, her heirs and assigns forever"* contains operative words effectively evidencing an intention by Edward Strawbridge to convey fee simple title to Ethel Strawbridge. (Emphasis ours.)

■ No technical words of grant are necessary to convey land. Baker v. Westcott, supra. In the Baker case the instrument was in nowise, as to form, a deed as set out by statute. The instrument was more in the form of a bond for title. However, the court held that it was effectual as a present conveyance since it used this language: "I dispossess myself of, and for my heirs and assigns relinquish the dominion and possession" of a described tract of land.

In the case of Harlowe v. Hudgins, supra, there was endorsed on a deed or envelope containing a deed the following: "Assignment. I assine the within to Elizabeth Graham for value received of her the sum of fourteen hundred and sixty three dollars and thirty three cents, this April 11th, 1843." It was held this would be sufficient as a deed to transfer not just title to the deed referred to but title to the land described in the deed referred to. The court said:

"The employment of words sufficient to show a purpose and intent to convey is all that was required either by statute or common law. * * * Whatever may be the inaccuracy of

expression or the inaptness of the words used in an instrument, in a legal view, if the intention to pass the title can be discovered, the courts will give effect to it, and construe the words accordingly."

See also Young v. Rudd, Tex.Civ.App., 226 S.W.2d 469, and Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757.

We hold that the words "to have and to hold the above described land * * * unto the said Ethel Strawbridge, her heirs or assigns forever" show an intention to convey title in fee simple to Ethel Strawbridge. Under the authorities above cited, we think there would be no question that had the deed read, "For and in consideration of $1.00 to me, Edward Strawbridge, in hand paid by Ethel Strawbridge, she, her heirs and assigns are to have and to hold the following described property," there would be an effectual conveyance of fee simple title to the land. We ascribe the same meaning to the language used in the habendum clause to the instrument. Black's Law Dictionary, Fourth Edition, says of the word "have" that it "imports ownership and has been defined to mean keep, to hold in possession, to own." In Webster's International Dictionary, Second Edition, it is defined to mean "To hold in possession and control; to hold as property; to own, as, he has a farm * * *"

In Busteed v. Cambridge Savings Bank, 306 Mass. 9, 26 N.E.2d 983, the court defined "have" as meaning to keep; to hold in possession, to own.

In the case of Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 1024, 80 S.W.2d 741, the Supreme Court was passing on the question of whether royalty reservations in mineral leases that were variously worded reserved a real interest in the minerals as distinguished from creating a personal obligation to pay so much money represented by a part of the minerals. In holding that however worded a royalty interest was retained and it constituted real estate, the court stated:

"Endeavoring to reach the true purpose and intent of parties, we can draw no substantial difference, so far as taxation is concerned, between an agreement *excepting* from a grant or a lease a certain fractional portion of minerals, or an agreement *reserving* the same portion, or an agreement that the lessor *'shall have'* or *rather shall continue to have* the same portion, * * *. In either instance, the title to the specified mineral portion is intended to remain or vest, and does actually remain or vest in the lessor."

In Webster's International Dictionary, Second Edition, the word "hold" is defined as meaning "To own or possess; to be in possession of;—to derive title to—."

We think it unmistakable that "to have and to hold the above described property * * * unto Ethel Strawbridge, her heirs or assigns forever" conveys to Ethel Strawbridge a fee simple title.

We fail to see why the presence of the words in the habendum makes any difference. We think the true rule is that if operative words or words of grant appear anywhere in the deed it suffices.

We have found no Texas case precisely in point. There are very old cases in a few other jurisdictions passing on the question. The following cases held resort could not be had to the habendum clause to supply words of grant: Brown v. Manter, 21 N.H. 528; Webb v. Mullins, 78 Ala. 111; Manning v. Smith, 6 Conn. 289. The following cases held you could resort to the habendum clause to find words of grant: Bridge v. Wellington, 1 Mass. 219; Kenworthy v. Tullis, 3 Ind. 96; Hummelman v. Mounts, 87 Ind. 178.

We feel the cases holding resort may not be had to the habendum clause are adhering too closely to the old rule concerning the role of formal clauses of a deed, and fail to recognize the modern rule that the intention of the parties is to be determined by considering the whole in-

strument and that arrangement in observance of formal clauses as known at common law is not of the essence of a deed.

In the case of Wright v. Lancaster, 48 Tex. 250, cited by appellants, the court seemed to recognize that if the words "to have and to hold" had been in the habendum clause the instrument would effectively operate to convey because it noted that in the instrument the court had before it there was no habendum clause. The court correctly held the instrument before it nowhere contained any operative words.

In the case of Vineyard v. O'Connor, 90 Tex. 59, 36 S.W. 424, 425, the court had before it the question as to whether a deed sufficiently named a grantee. The court held that to determine this the *whole of the instrument would be looked to* and mere formalities were not controlling. The court said:

"Lord Coke says: 'I have termed the said parts of the deed formal or orderly parts, for if such a deed be without premises, habendum, tenendum, reddendum, clause of warrantie, the clause of in cujus rei testimonium, the date and the clause of hiis testibus, yet the deed is good. For if a man by deede give lands to another and to his heirs without more saying, this is goode * * *. So it is if A. give lands to have and to hold to B. and his heires, this is good, albeit the feoffee is not named in the premises.' * * * In a deed as in all other written instruments, it is the duty of the court to determine the intention of the parties to it; and when the instrument itself makes it manifest that it was the purpose of the grantor to convey the property to another, who in the deed itself is designated with reasonable certainty, it will take effect as a conveyance * * *. So if the deed do not express to whom the property is conveyed, yet, as we have seen, if the grantee be named in the habendum, the deed is sufficient,—not because the

habendum says expressly who the grantee is, *but because the inevitable presumption is that the person who is 'to have and to hold' the property is the party to whom it was intended to be conveyed.* (citing Newton v. McKay, 29 Mich. 1.)" (Emphasis ours.)

■ While confident we are correct in holding the instrument of October 20, 1941, to be a deed, the case must nevertheless be reversed and remanded and it becomes necessary for us to consider appellants' Points of Error because of the manner in which, and the theory on which, the case was tried in the court below.

Appellants contend that the instrument of April 24, 1940, whether it be a will or a codicil, revoked the will of 1928, except as to the property located in Wisconsin, so that Edward Strawbridge died intestate as to the land lying in Matagorda County, Texas. Since this is true, so appellants contend, Ethel Strawbridge inherited under the laws of descent and distribution a one half interest and became a tenant in common with them and the other heirs of Edward Strawbridge, and, being tenants in common, she must have not only repudiated the title of the co-tenants, but must have given them notice of such repudiation, or have exercised over the land acts of such a nature and notoriety as to charge the co-tenants with notice of the repudiation of their title and thus the adverse nature of her claim. Appellants assert the evidence fails to establish a repudiation of title, or, in any event, the co-tenants had no notice of such and the acts exercised by appellee over the land were not sufficient as a matter of law to charge them with notice so as to establish title by limitation.

Further, appellants say the following instruction should have been given in connection with the special issue submitted to the jury:

"In connection with Special Issue No. 1, you are instructed that upon the death of Edward Strawbridge on July 9, 1943, his surviving wife, Ethel

Strawbridge, inherited from him an undivided one-half interest in the lands in controversy and became a cotenant or tenant in common with the Defendants in this cause, who in turn, inherited from Edward Strawbridge the other undivided one-half interest in such lands, and that her possession, payment of taxes, keeping the property rented, collection of rents and repair of fences in connection with the land in controversy would be presumed to have been for the benefit of the common title and for all of the cotenants, and not adverse to her cotenants, unless and until she repudiated the title of her cotenants to any interest in the land and openly held the same adversely to the title of said cotenants, if you find she did so, and until she gave notice of such repudiation and adverse claim, if any, to said cotenants. Cotenancy or tenancy in common means where two or more parties own undivided interest in the same tract of land. It was not necessary for the said Ethel Strawbridge to give actual notice to said contenants of a repudiation and adverse holding, if any, but such notice may have been brought home to the cotenants if the jury find from a preponderance of the evidence that the adverse occupancy, if any, and claim of title, if any, on the part of said Ethel Strawbridge was open, notorious, exclusive and unequivocal for such a length of time as to be inconsistent with the existence of title in such cotenants and of such notoriety as to constitute notice to the Defendants."

We have reached the conclusion that the effect of the instrument of April 24, 1940, was to revoke the will of 1928, except as to Mr. Strawbridge's property in the State of Wisconsin, and, there being no residuary clause in the 1940 will, he died intestate as to the property involved in this suit.

Where a testator makes a will and thereafter executes a codicil to the will,

or another will, the first instrument or will is not revoked unless it appears from the codicil or subsequent will that the testator intended by such subsequent will or codicil to revoke the previous will. This intention may be evidenced by an express clause of revocation or by reason of such inconsistent disposition of property covered by the successive testamentary instruments that all cannot stand. In the last situation the last instrument revokes the previous ones by implication to the extent of such inconsistency only. The instruments will be construed together as the last will and testament of the testator except to the extent of the revocation. Revocation by implication is not favored, but if the intent to revoke is clearly manifested by the subsequent instrument it must be given effect though there be no express revocation. Warnken v. Warnken, Tex.Civ.App., 104 S.W.2d 935; Watson v. Lindsley, Tex.Civ.App., 2 S.W.2d 339; Harmon v. Ketchum, Tex.Civ.App., 299 S.W. 682; 44 Tex.Jur., §§ 99–101. The cardinal rule is to ascertain the intention of the parties.

In the instrument executed in Florida in 1940 there is no unqualified clause expressly revoking the Wisconsin will of 1928. Unquestionably it revokes the Wisconsin will to the extent that it disposes of the Florida property because of complete inconsistency in that regard between the two instruments. Too, a new executrix is appointed. Then the Florida instrument refers to the fact that in a previously executed Wisconsin will he disposed of his Wisconsin property. Then follows this significant language: "I desire that the provisions of that will shall stand *unrevoked so far as they affect the said property in Wisconsin.*" (Emphasis ours.) This was not a republication of the whole Wisconsin will; it was a republication of it only as it affected Wisconsin property. While this language does not expressly say that all other provisions of the Wisconsin will are revoked, we think such is the necessary implication of the language used. By the testator's having said the provisions of the will should re-

main unrevoked "so far as they affect the said property in Wisconsin," he evidenced an intent to revoke the other provisions of the will.

■ There is a well established rule of construction which has many times been employed in construing statutes and contracts where the intent of the legislature or the parties was sought. It is the rule which says that the expression of one thing is exclusive of all others (expressio unius est exclusio alterius). See City of Brownsville v. West, Tex.Civ.App., 149 S.W.2d 1034, writ dism., judg. corr.; Southern Coast Corp. v. Sinclair Refining Co., 5 Cir., 181 F.2d 960; Tower Corporation v. Morris, Tex.Civ.App., 153 S.W.2d 654 writ ref.; Kleck v. Kleck, Tex.Civ.App., 246 S.W. 720, no writ hist. While appellee urges such rule is not applicable to the construction of wills, no appealing reason has been advanced as to why it should not be applied, and we can think of none. It seems to us to be a logical, sensible and sound rule to be employed where we seek to ascertain intention. It was applied to the construction of a will in Ellis v. First National Bank in Dallas, Tex.Civ.App., 311 S.W.2d 916, ref., n.r.e.

We apply the rule here and ascertain that the Wisconsin will was revoked except as to testator's property located in Wisconsin.

■ We are not unmindful that the effect of this construction is to create intestacy as to the Texas property and that there is a presumption that a person making a will does not intend to die intestate as to any property. This is but presumption and in any case of this kind the question is as to the deceased's intention. 44 Tex.Jur., p. 709. We have carefully weighed the effect of all applicable rules and remain convinced that Mr. Strawbridge intended to revoke the Wisconsin will except as it disposed of Wisconsin property.

■ Appellants and appellee were, therefore, tenants in common.

We must briefly notice the evidence relied on by appellee to establish title by limitation.

■ Ethel Strawbridge testified she always claimed the land after Edward Strawbridge gave her the instrument we have held to be a deed. She leased the land from 1941 or 1942 to 1952 to W. C. Melbourn under oral lease for the purpose of grazing cattle. She paid all taxes to all taxing units on the property. She collected the rents and made no division of the rents with anyone. No one ever claimed the land against her prior to 1955. She leased the land in 1954 to Magnolia Petroleum Company for mineral purposes. There is no evidence that this lessee ever took possession. She collected the rentals under this lease. She also collected the entire bonus. She claimed title to the land against the world. No one ever offered to help or helped her pay the taxes. She never notified the defendants she was claiming the property because she didn't know it was necessary. There was a barbwire fence around the land, but she doesn't know if it is fenced with other land. Her land is supposed to be fenced. Mr. Melbourn leased the land to Mr. Mehrens.

Mr. Melbourn did not testify. Mr. Mehrens, who originally leased or subleased from Mr. Melbourn, did testify. He came to Bay City in 1945, but he had lived in Matagorda County 65 years—all his life. He first became acquainted with the Strawbridge property about 1936. After October, 1941 he knew Mr. Melbourn was using the land. He bought adjoining land in 1942 and tried to lease the Strawbridge property from Mr. Melbourn to put a "rice well" on it, and finally "got it" in 1944. The property was fenced in 1942. He did not know how long it had been fenced. In 1944 the fence was in bad shape. He completely repaired the fence. Mr. Melbourn used "all of this" in one pasture. He had the fence nailed down. In normal repair it would turn cattle. After he repaired the fence, it

was a normal fence. When he took the property over in 1944 he knew Mrs. Strawbridge was claiming the land. Since 1944 Mr. Mehrens used the land for pasture. He claimed the land for Mrs. Strawbridge. He was her tenant. He claimed it openly and adversely against the world. He farmed the land in 1955 for rice. He ran cattle on it during all of the time. No one ever made a claim against the property. Mr. Mehrens had 1400 acres of land adjacent to the Strawbridge property. He used the Strawbridge property with his land as one piece. The fence between his land and the Strawbridge property was nailed down in places to allow cattle to graze back and forth between the properties. Mr. Melbourn had 1100 acres adjoining the Strawbridge land on three sides. He doesn't know who built the fence. When "doodle buggers" would inquire about who owned the land, he at first sent them to Mr. Melbourn and on one or two occasions before 1952 he referred them to Mrs. Strawbridge.

Mrs. Vernette Harris testified to heirship and to establish she had no notice of any adverse claim by Mrs. Strawbridge. She didn't know of any land in Texas until this suit was filed.

It will be noted that nowhere does it appear how many head of cattle were grazed on the land nor with what frequency.

We think the evidence as presented by this record does not support a title in appellee by limitation because she was a tenant in common with appellees, if she was not the owner under the instrument of October 20, 1941.

▮▮▮ A tenant in common must repudiate the title of her tenants in common and must give notice to them of such repudiation, or her acts asserting entire ownership must be so notorious and unequivocal as to raise an inference of notice. Condra v. Grogan Manufacturing Co., 149 Tex. 380, 233 S.W.2d 565; Republic Production Company v. Lee, Tex.Com.App., 132 Tex. 254, 121 S.W.2d 973; Jones v.

Siler, Tex.Com.App., 129 Tex. 18, 100 S.W. 2d 352; Fulcher v. Carter, Tex.Civ.App., 212 S.W.2d 503, no writ hist.

In this case absence of actual notice is shown. The only evidence on which one might seek to rely to establish constructive notice is possession by tenants, casual grazing of an unstated number of cattle, payment of taxes and collection of rentals. This is deemed not sufficient to charge the other cotenants with the hostile nature of the cotenant's use. Fulcher v. Carter, supra; Phillipson v. Flynn, 83 Tex. 580, 19 S.W. 136.

It is apparent to us, however, from a reading of the record, that the case has not been fully developed. On another trial appellee may be able to show more extensive use of the property of such a nature as to raise a fact issue that appellants had constructive notice of appellee's claim. Whether the evidence suffices to raise a fact issue depends in each case on all facts and circumstances. If the evidence is the same on a retrial, we feel there would be no fact issue raised.

We feel the complete repairing and maintenance of the fences as shown in this case, made as they were by appellee's tenant for the purpose of using the land as a tenant of appellee, the tenant at all times claiming the land for appellee, plus the fact that if the instrument of October 20, 1941 was not a deed, entry was not made by appellee under a deed, suffice to satisfy the requirement of fencing where land is used for grazing. The facts in this regard distinguish this case from Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781; West Production Company v. Kahanek, Com.App., 132 Tex. 153, 121 S.W.2d 328, and other authorities cited by appellants.

On retrial if the evidence raises a fact issue as to notice to appellants, the court will in connection with the issue on limitation give the charge approved in Viduarri v. Bruni, Tex.Civ.App., 179 S.W.2d 818. The charge requested below, containing as

it does a recitation of much of the evidence, constitutes a comment on the weight of the evidence.

If we be in error as to the instrument of October 20, 1941 being a deed, it would not be sufficient as an instrument required under the 5 or 10 year statutes of limitation.

 The court correctly held appellees' suit to reform such instrument was barred by limitation because appellee had notice of the claimed defect more than four years before suit was filed. While appellee stated this phase of the suit was to remove cloud from the title, it remains in fact only a suit to reform because of mutual mistake because the cloud alleged is the very instrument upon which appellee must rely to show title in herself.

If upon retrial appellee offers the instrument as a deed conveying title to her, it will be admitted as such, and if the record shows common source to be Edward Strawbridge, as this record does, in the absence of other nullifying circumstances not here suggested, judgment will be for appellee. If the deed is offered, as it was in the trial below which occasioned this appeal, as a deed going to aid in establishing limitation title, it will be admitted and given its proper effect in the light of all the evidence developed on retrial.

The judgment of the trial court is reversed and remanded, with instructions.

On Appellants' Motion for Rehearing

The only part of appellants' motion for rehearing we deem it necessary to notice by writing is the part that points out that if the instrument from Edward Strawbridge to Ethel Strawbridge is a deed, as we have held, this would take title out of Edward Strawbridge and he could not be the common source of title as between appellee and appellants. Of course, we are dealing with a record which reflects appellants' sole claim to title is under Edward Strawbridge as his heirs. Appellee's claim to title, apart from limitation, is under Edward Strawbridge. It would seem to us that if such is the only source of title claimed by appellants and appellee, the rules as to common source would apply though on trial proof might be wanting that appellants had any title out of Strawbridge. Of course, we do not know what the claim may be on a retrial of the case.

The motion for rehearing is overruled.