### GREAT SOUTHERN LIFE INS. CO. v. DODSON.

### No. 5338.

Court of Civil Appeals of Texas. Amarillo.

Oct. 20, 1941.

Frank R. Day, of Plainview, for appellant.

Griffin & Morehead, of Plainview, for appellee.

FOLLEY, Justice.

This is a suit in trespass to try title brought by the appellant, Great Southern Life Insurance Company, against the appellee, Mrs. S. E. Dodson, to recover title and possession of 30 acres of land in Hale County known as the North 30 acres of Section No. 7 in Block NK, originally patented to W. R. Dodson, deceased husband of the appellee.

The appellee answered by general demurrer, general denial, a plea of not guilty and specially pleaded the ten-year statute of limitations, Vernon's Ann.Civ.St. art. 5510, claiming peaceable and adverse possession of the land for the required statutory period.

The cause was submitted to a jury in a single issue embracing the essential elements of ten-year limitations which issue was answered in favor of the appellee. The court thereupon rendered judgment for Mrs. Dodson.

The record reveals that W. R. Dodson was twice married, the appellee being his second wife. There were three children of the first marriage and five of the second. W. R. Dodson died in 1906, leaving the appellee and his eight children surviving him. In 1907 the land of the two community estates was partitioned between the survivors in the District Court of Hale County. At such time all of the children were minors residing with the appellee except Mrs. Mattie Kahn, the eldest child of the first marriage. According to the partition proceedings and a map introduced in evidence in the instant suit the two community estates owned 607.6 acres of land in Hale County. It consisted of the W. R. Dodson Pre-emption Survey, the W. A. Lowe Pre-emption Survey, Survey 7 of Block NK, and the Northeast one-fourth of Survey 62 in Block R. At the time of the partition the W. R. Dodson Pre-emption Survey contained two tracts, the South 160 acres forming one and the North 37.5 acres the other. Immediately south of and adjacent to the Dodson survey is the Northeast one-fourth of Survey 62 containing 160 acres of land. About 60 varas east of the east line of the Dodson survey is the west line of the W. A. Lowe Pre-emption Survey which latter survey contains 160 acres. Survey 7 of Block NK consists of 90.1 acres and is a narrow U shaped strip of land adjacent to the whole of the east side of the Lowe survey extending on around and adjacent to the whole of the north side of the Lowe survey and then running south adjacent to the west side of such survey for about 180 varas. The west portion of this Survey 7 is adjacent to the north 37.5 acres of the Dodson survey above mentioned. In the partition suit Survey 7 was divided into two tracts, Tract No. 5 and Tract No. 7. Tract No. 5 was described as the south 60.1 acres of Survey 7 and included all of the strip on the east side of the Lowe survey except a small portion on the north end of the east side strip. Tract 7, the land in controversy herein, was the remainder of Survey 7 and was described as the north 30 acres of Survey 7.

In the partition all of the land of the two community estates was subdivided into nine separate tracts. The south 160 acres of the W. R. Dodson Survey was subdivided into Tracts 1, 2 and 3. The North 37.5 acres of such survey was denominated Tract No. 6. The Northeast one-fourth of Survey 62 was called Tract 4. The W. A. Lowe Survey was subdivided into Tracts 8 and 9. These seven tracts just mentioned, together with Tracts 5 and 7 of Survey 7, comprised the nine tracts of land. In the partition judgment Tracts 2, 6 and 7 passed to John and Sadie Dodson, children of the first marriage, in undivided one-half interests. The appellee was awarded Tracts 4 and 5. To the other children were awarded the remaining four tracts which are not pertinent to this controversy. After the partition the minor children continued for a number of years to reside in the same home with the appellee.

In September, 1913, Sadie Dodson, then Mrs. Sadie Ogg, joined by her husband, conveyed her undivided one-half interest in Tracts 2, 6 and 7 to A. G. Sargent. In August, 1914, John Dodson conveyed his one-half interest in the same land to P. F. Bryan who later acquired the other half interest in the three tracts. After mesne conveyances not material to this controversy the record title of Tracts 2, 6 and 7 finally passed to the appellant, Great Southern Life Insurance Company.

It is uncontroverted that since the partition in 1907 the appellee has been in continuous possession of Tract No. 7, the land involved in this suit. The chief controversy is whether such possession was adverse to the appellant and those under whom it claims. It is also undisputed that the appellee built a partition fence some thirty years ago separating Tract 6 in the Dodson survey from Tract 7 in Survey 7, since which time Tract No. 7 has been in the same enclosure with Tract No. 5 owned by the appellee and about which there is no controversy. The appellee contends by her testimony that she thought Tract No. 7, or the north 30 acres of Original Survey No. 7, was awarded to her in the partition judgment. In this contention she was corroborated by other testimony. It was shown beyond question that since the legal title to the land passed out of the family none of the record owners ever demanded any of the rents or revenues therefrom or asserted any claim or title to the tract until a short time before this suit was filed in 1940. On the contrary the record affirmatively and con-

clusively discloses that from 1907 until the filing of this suit the appellee has been undisturbed in her possession of the land and in the enjoyment of all rights, privileges, rents and revenues connected therewith.

The appellant contends that there was no adverse possession of the land by the appellee because there was no change in the nature and character of the holding before and after the partition suit in 1907. This contention is based primarily upon the fact that for a number of years after the partition John and Sadie Dodson, together with the other minor children, remained in the home of the appellee all enjoying together the rents and revenues from the land in controversy. The appellant thus asserts that subsequent to the partition the appellee was in the same position as a grantor after a conveyance remaining in possession in recognition of the grantee's title, and in order to establish a limitation title must necessarily have repudiated the title of the record owner in some manner other than naked possession of the land. We recognize the rule that where a claimant enters into possession of a tract of land in privity with or in recognition of the true owner's title, he cannot thereafter perfect a claim of title or defense under the statute as against the true owner without bringing to his notice a repudiation of the recognition and the assertion of an adverse claim, and the "right to shield his possession under the statute or to carve an estate, dates only from his repudiation". Thompson et al. v. Richardson, Tex.Com.App., 221 S.W. 952, 953; 2 Tex.Jur. 144, par. 75, and authorities cited. But this rule, we think, is not applicable to the facts of this case. There is no intimation from the evidence that the appellee went into possession of the land after the partition in recognition of the rights of her stepchildren or that in any manner she has since recognized the rights of their grantees and their successors in interest. On the contrary the testimony reveals that at all times since the partition the appellee has possessed the land

under the mistaken belief that it passed to her under the partition judgment. Therefore, this case more accurately falls within the rule that there is nothing to prevent a vendor from claiming the benefit of the statute where he remains in possession of the land conveyed without recognizing the vendee's rights but claiming the land as his own. Smith v. Montes, 11 Tex. 24; Thomson v. Weisman et al., 98 Tex. 170, 82 S.W. 503; Texas & P. Ry. Co. v. Maynard, Tex.Civ.App., 51 S.W. 255, writ denied; Harne v. Smith, 79 Tex. 310, 15 S.W. 240, 23 Am.St.Rep. 340. In this connection if it might be said that appellee held the land prior to 1913 and 1914 in recognition of the rights of her stepchildren we think it unreasonable to assume under the circumstances that thereafter she continued to hold the land in deference to the rights of the subsequent record title holders. Certainly the continued, open and notorious use, occupancy and enjoyment of the land and the receipt of its rents and revenues for some twenty-five years after the legal title passed out of her stepchildren was an actual, visible and notorious holding hostile in character and inconsistent with the rights of the appellant and its predecessors in the record title. "As a rule", it is said, "continued open and notorious possession by a grantor will be deemed to be adverse where it is of such a character as to be entirely inconsistent with the rights of the grantee". 1 Am.Jur. 819, par. 48. The fact that through all the years the appellee held the land under the erroneous conclusion that it passed to her in the partition judgment would not denote that her possession lacked hostility nor defeat her title by limitation. Bruce v. Washington et al., 80 Tex. 368, 15 S.W. 1104; Gleckler v. Denton et al., Tex.Civ.App., 149 S.W.2d 213; Major et al. v. Meyers et ux., Tex.Civ.App., 111 S.W.2d 1184; 2 Tex.Jur. 125, par. 65. We therefore conclude that under this record the appellee has sufficiently established her limitation title.

The judgment is affirmed.