### FULCHER et al. v. CARTER et al.
### No. 5880.

Court of Civil Appeals of Texas. Amarillo.
May 24, 1948.

Rehearing Denied June 28, 1948.

504

Boyer, McConnell & Hankins, of Perryton, for appellants.

Arthur M. Teed, of Pampa, for appellees.

STOKES, Justice.

This is a suit in trespass to try title. It was instituted by appellees, Frank Carter, Leo Rosenvall and Elva McNabb, the collateral heirs of Mrs. Pearl Hatfield Fulch-er, deceased, and Aline McAfee, the surviving wife of Elton C. Hatfield, deceased, against the appellant, O. N. Fulcher, who is the surviving husband of Pearl Hatfield Fulcher. The purpose of the suit was to recover title and possession of four tracts of land situated in the city of Borger, in Hutchinson County, and for an accounting of rents.

Elton C. Hatfield was the only child born to Pearl Hatfield Fulcher, and was the issue of her former marriage. He was born June 7, 1906, and died intestate April 2, 1933. Elton C. Hatfield had one child, a daughter, born February 7, 1929, and she died in 1933. There were therefore no natural child or children, nor their descendants, surviving Pearl Hatfield Fulcher at her death, which occurred on February 4, 1945. Mrs. Pearl Hatfield married the appellant, O. N. Fulcher on March 7, 1926, and on April 16, 1930, she executed and filed for record a deed of adoption whereby she adopted Charles Aubrey Hatfield as her legal heir under Article 42 et seq. of the Revised Civil Statutes of 1925. We shall hereafter refer to those articles as the "old law," since they were repealed in 1931 by an Act of the 42nd Legislature which substituted for them the present Article 46a of Vernon's Revised Civil Statutes. Tracts numbers one, two and four were taken in the name of Pearl Hatfield Fulcher and tract number three was taken in the name of Mrs. Fulcher and her natural son, Elton C. Hatfield. Mrs. Fulcher died intestate in Hutchinson County on February 4, 1945, and on June 9, 1947, Charles Aubrey Hatfield executed to the appellant, O. N. Fulcher, a quit claim deed in which, for a consideration of $1500, he conveyed to appellant all of his right, title and interest in the four tracts of land involved in this suit.

Appellees alleged in their petition that Aline McAfee was the only surviving heir of Elton C. Hatfield and the remaining plaintiffs, as collateral kindred, were the sole and only heirs at law of Pearl Hatfield Fulcher, deceased. They alleged that appellant was her surviving husband and that he had taken possession of all the property sued for, collected the rents and revenues therefrom and prayed judgment

decreeing to them the title and possession of the property and for an accounting of the rents and revenues.

Appellant pleaded not guilty and set up title in himself under Article 5510, commonly known as our ten-year statute of limitation and adverse possession. The case was submitted to the court without the intervention of a jury and resulted in a judgment based upon the old law, Article 42 et seq., R.C.S. 1925, in favor of the appellees, decreeing to each of them a specific interest in the various tracts not necessary here to detail and in favor of Aline McAfee for an undivided one-half interest in tract number three and a judgment against appellant for $990 as an accounting of rents and revenues. The judgment also decreed to Carter, Rosenvall and Elva McNabb each $147.37 for rents and revenues collected and retained by appellant during his occupancy and possession of the property. It decreed to appellant only one-fourth of the separate property of Pearl Hatfield Fulcher under his deed from Charles Aubrey Hatfield.

Appellant duly excepted to the judgment, perfected an appeal and presents the case to this court for review upon two assignments of error. He contends, first, that the court erred in holding and decreeing that the inheritance of Charles Aubrey Hatfield, the adopted son of Pearl Hatfield Fulcher, deceased, was limited to one-fourth of her estate under the old law and, secondly, in holding that appellant had not acquired title to the undivided one-half interest in tract number three, claimed by Aline McAfee, upon his plea of limitation and adverse possession under Article 5510, the ten-year statute of limitation.

The basis of appellant's contention under his first assignment of error is that the property belonged to Pearl Hatfield Fulcher in her separate right; that she adopted Charles Aubrey Hatfield under, and in accordance with, the old law; that her natural son and only natural child, Elton C. Hatfield, and also Elton's only child, both died intestate prior to the death of Pearl Hatfield Fulcher, leaving Charles Aubrey Hatfield, her adopted son, as her sole and only heir at law; and that Charles Aubrey Hatfield having conveyed to appellant his interest in the property, appellant was entitled to a judgment decreeing the property to him because Pearl Hatfield Fulcher's death occurred after the old statute was repealed and the present Article 46a, V.R.C.S., was enacted and became effective as the law of the State.

Appellees resist the contention of appellant and assert the court correctly concluded that the inheritance of Charles Aubrey Hatfield was limited to one-fourth of the estate of his adoptive mother because it was so limited by the adoption statute in effect when he was adopted by her on April 16, 1930, which was before the enactment of the present statute, Article 46a, V.R.C.S., and while the old law was in effect.

▇▇▇ Under the old law the process of adoption was very simple. It was accomplished by the execution and filing for record in the office of the county clerk a written instrument or deed, duly acknowledged, reciting in substance that the adopting person adopts, as his legal heir, the person named therein. When the adoption deed was recorded, it entitled the child or person so adopted to all of the rights and privileges of a legal heir of the adoptive parent, the same as a child had by law against lawful parents, except that, if the adoptive parent had, at the time, or should thereafter have, a child begotten in lawful wedlock, such adopted heir should in no case inherit more than one-fourth of the estate of the adoptive parent. In 1931 the entire adoption title was repealed and the present Article 46a, V.R.C.S., was substituted therefor. Under its provisions the process of adoption is wholly different from the old law. Instead of the simple form of a statement or deed, the present law requires a judicial process. When it is complied with and a child adopted under it, the child is deemed and held to be the child of the person so adopting as fully as though born in lawful wedlock. Adopting parents are entitled to the child's services and to its control, custody and company and it shall inherit from them as fully as though it were their natural and legitimate child. From this it will be seen that, if the provisions of the old law are applicable to the case, Charles Aubrey Hatfield inherited

from his adoptive mother, Pearl Hatfield Fulcher, only one-fourth of her estate; but, on the other hand, if the provisions of the present statute, Article 46a, are applicable, he inherited from her all of the property of which she died seized and possessed. This is true because there was born to Pearl Hatfield Fulcher a natural child and, under the provisions of the old law, even though that child died before she adopted Charles, and before her own death, Charles' inheritance was limited to one-fourth of her estate. It is a general rule of law, recognized in all jurisdictions in this country whose courts have passed upon the question, and with which we are familiar, that the law in force at the time of the adoptive parent's death determines the right of the adopted child to inherit the adoptive parent's property. This necessarily follows from the fact that there is no such thing as an heir of a living person. No vested rights arise, therefore, until the death of the ancestor. Eckford v. Knox, 67 Tex. 200, 2 S.W. 372. In the cited case Chief Justice Willie, speaking for the Supreme Court, said: "When the statute says that one person may adopt another as his heir, and that the latter thereupon becomes entitled to all the rights and privileges of a legal heir of the party so adopting him, it means that, upon the death of the adopting party, the other shall, if living, become entitled to an interest in all property of which he shall die intestate, and shall not be wholly excluded by any class of persons whatsoever." Since the right to inherit as the heir of an intestate does not exist until the death of the intestate, it necessarily follows that the law in effect in the jurisdiction, and at the time of the death, of the intestate applies to the rights acquired by the inheritance. If it were otherwise there would, in many cases, be a confusing lack of certainty as to such an inheritance. The rule has been carried by our courts to the extent that a child or person adopted in one state or country inherits land located in another state or country, not under the law of the state or country in which the adoption was made, but in the state or country where the land is situated. Martinez v. Gutierrez, Tex.Com.App., 66 S.W.2d 678, 680. In that case one Jose

Encarnacion Gutierrez was adopted by Gregoria Martinez in the Republic of Mexico in 1851 in accordance with the laws of that Republic. The plaintiffs in the trial court, appellants in the Court of Civil Appeals and appellees in the Supreme Court, were the children of Jose and claimed a one-fourth interest in certain land in Zapata County. Gregoria was a child and heir of Antonio Gutierrez, the original grantee from Spain. Gregoria died without other children than her adopted son, Jose. The defendants in the trial court were the heirs and children of the brothers and sisters of Gregoria Martinez. They urged a general demurrer to the petition, contending that the courts of this state would not recognize such adoption in Mexico because the law then in effect there, both with reference to the method of adoption and the rights of the adopted child to inherit, were fundamentally different from the laws and policies of Texas. The trial court sustained the demurrer and plaintiffs appealed. The Court of Civil Appeals reversed the judgment and a writ of error was granted by the Supreme Court. The opinion of that court was written by Judge Smedley and it held first, that, when the laws of any state or country pertaining to adoption are complied with, regardless of what the required process might be, a status is fixed between the adopter and the adopted similar in nature to that of marriage. It is so recognized by all jurisdictions whose laws are not, for some reason, inconsistent with it. It held, secondly, that the right to inherit property is measured, as to realty, by the law of the place where the land lies. The judgment of the Court of Civil Appeals reversing the judgment of the trial court was therefore affirmed by the Supreme Court. The principal is therefore established as the law that there are two separate and distinct elements involved in an adoption proceeding, regardless of its nature. They consist of (1) the status created by adoption, with its accompanying capacity to inherit property, which status is controlled by the law of the place where the adoption is accomplished, and (2) the right to inherit property which, in its relation to real property, is fixed and determined by the

law of the jurisdiction in which the real estate is situated. The method required by the law of a foreign jurisdiction or another State is of small importance in so far as the right to inherit land in Texas is concerned. In the Martinez case it was said: "The decisions that have to do with the effect of the law of the State of adoption upon the right of the adopted child to inherit land in another state concern themselves but little with differences in the method of adoption." In other words, when a child is adopted in another jurisdiction in accordance with its laws, its family status is thus fixed and, if the adopting parent dies intestate and possessed of lands in Texas, the adopted child will be recognized as such in Texas and allowed to inherit the estate of its deceased adoptive parent according to the laws of Texas.

We have not been cited to any Texas case in which the identical question here presented has been decided and our own search has failed to reveal any, but the authorities we have discussed, and others cited by them, deal with the principals of law that must control our decision in this case. There can be no essential difference in principal between the rights of a child adopted in another state or country to inherit land in this State and the right to such an inheritance of a child adopted under former laws of our own State which have been repealed and a new law with different provisions enacted. If the former inherits under the law as it exists in this State on the date of the death of his adoptive parent, a fortiori the latter would be entitled to the same right.

Appellees contend that the old adoption statute did not make the adopted person a child of the adoptive parent and, Charles Aubrey Hatfield not being a child of Pearl Hatfield Fulcher, he does not come within the purvue of Article 2571, R.C.S., our statute of descent and distribution. That Article provides that if the deceased have a child or children, the surviving husband or wife shall be entitled to an estate for life in one-third of the real estate with remainder to the child or children of the intestate. The point posed

here is that our courts have many times held that, a child adopted under the old law did not thereby become a constituent member of the family of the person adopting him, and such child cannot, therefore, be said to be the child of the adoptive parent within the meaning of Article 2571. It is true our courts have consistently so held. Eckford v. Knox, 67 Tex. 200, 2 S.W. 372, and many later decisions following it. It has also been recently held by the Supreme Court that under the new statute, Article 46a, V.R. C.S., an adopted child is not entitled to letters testamentary upon the estate of his adopting parent under the old law as against a brother of the deceased who was the next of kin, as provided in Section 5, Article 3357. That holding was based upon the absence from the old adoption law of a specific provision to that effect, or a provision such as is contained in Section 9 of Article 46a, the new statute, which makes the adopted person the child of the adopting parents as though the adopted person had been born to him in lawful wedlock. It has at all times been consistently held by all of our courts, however, that, even under the old statute, the status of an adopted person was the same with respect to the property of the adopting parent as that of the parent's own child, limited only by the provision of the old law as to the proportion where there were natural children. Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77; Masterson v. Harris, 107 Tex. 73, 174 S.W. 570; Eckford v. Knox, 67 Tex. 200, 2 S.W. 372; Clark v. West, 96 Tex. 437, 73 S.W. 797.

The question involved in this case is not one of social or family status nor is it affected by the provision of Article 3357 which provides that letters testamentary shall be granted " * * * 5. to the next of kin of the deceased, the nearest in the order of descent." It has reference solely to matters pertaining to the estate of a deceased intestate, and the relation of an adopted person to that estate, and the social or family status of Charles Aubrey Hatfield in the family of his adoptive mother, either before or after her death, is not involved. The question is:

Was he entitled to inherit her entire estate at her death, or only one-fourth of it, he having been adopted under the old law and she having died after the enactment of our present Article 46a, V.R.C.S.?

■ Appellees cite us to the case of Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638, 642, and contend that it is there definitely held by the Supreme Court that the rights of inheritance of an adopted child under the old law were not enlarged or changed by the new Article 46a in respect to the proportion of the property of the adopting parent. We do not so understand the holding in that case. The facts were that Frederick Hoch was adopted by Fred Hoch and his wife, Lillian, in 1921, Frederick then being an infant. Fred Hoch and his wife, Lillian, were thereafter divorced and Lillian afterwards married a man by the name of Berry. Fred Hoch died intestate in October, 1940, leaving an estate consisting of real and personal property. No child was ever born to Fred Hoch and Henry Hoch, as the next of kin, a blood brother of Fred, made application to be appointed administrator of Fred's estate. Frederick Hoch, the adopted son and sole heir at law of the deceased, waived any right he had to be appointed administrator in favor of his adoptive mother, Mrs. Lillian Berry, and they contested the application of Henry Hoch, contending that Mrs. Berry was entitled to the letters testamentary. The trial court granted the application of Henry Hoch and, upon appeal, the Court of Civil Appeals reversed the trial court, holding that Mrs. Berry was entitled to the appointment. A writ of eror was granted by the Supreme Court and the judgment of the Court of Civil Appeals was reversed and that of the trial court affirmed. It was contended by Frederick Hoch and Mrs. Berry that, Fred Hoch having died after the enactment of the new statute, 46a, Frederick became, for all lawful purposes, the son and heir of Fred Hoch, just as though he had been born to the latter in lawful wedlock. In the opinion, written for the court by Justice Critz, it is said that, had Frederick Hoch been adopted by Fred Hoch under the new statute, 46a, Frederick would, in law, have been the son of Fred Hoch just

as though he had been born to Fred in lawful wedlock. It was held, however, that an examination of Section 9 of the new Article, from its four corners, and when it is construed in the light of the subject matter of the legislation, and the end sought to be accomplished, the court was convinced that the statute as it now stands, with its opening clause "When a child is adopted in accordance with the provisions of this Article," etc., can only be applied to a child adopted according to its provisions in all except two particulars. The two exceptions were "(a) the statute protects and preserves the heirship rights of a child adopted under former statutes. In this connection the statute provides, 'all adopted children shall inherit from the adopted as well as its natural parents.'

"(b) This statute applies to children residing in this State who have been adopted under the laws of another State of the United States."

We understand appellees' contention to be that the holding of the Supreme Court to the effect that the statute protects and preserves the heirship rights of a child adopted under former statutes must be interpreted to mean that the heirship rights of an adopted child were thus restricted to the quantum or portion of the property of a deceased and intestate adoptive parent as provided under the old law which, in this case, would be one-fourth of the estate. We are not in accord with appellees in their interpretation of the holding. The word "rights" is a comprehensive term and is frequently used to denote faculty, prerogative or privilege and it is frequently used also to denote possession and even the ownership of property to which one is entitled. In our opinion it was used by Judge Critz in the Hoch case as denoting faculty or privilege, as distinguished from ownership, possession and other similar terms. So construing the expression, the holding means that the privilege or capacity of a child adopted under the old law to inherit from its adoptive parent is brought forward and preserved by the new statute. That is to say, the right to inherit is not restricted by the opening clause of Section 9, viz.: "When a child is adopted in accordance with the

provisions of this Article." This interpretation is the only rational one in view of the fact that a child or heir apparent has no vested interest in the property of an ancestor until the death of the latter. The case of Eck v. Eck, Tcx.Civ.App., 145 S.W.2d 231, supports our conclusion in principle. In that case it was held that a child, adopted under the provisions of a statute giving no right of inheritance through or from the natural child of the adoptive parent, is entitled to the benefit of a statute enacted subsequently to the adoption, but prior to the death of the natural child, conferring such right. The Eck case was commented upon favorably by Judge Critz in the Hoch case and, in our opinion, the interpretation placed by appellees upon the language used in the Hoch case in expressing the exception would conflict with the holding in the Eck case. The two holdings will harmonize, however, when the language used in the Hoch case is interpreted in consonance with our conclusion.

In the case of Brooks Bank & Trust Co. v. Rorabacher, 118 Conn. 202, 171 A. 655, 657, the Supreme Court of Errors of Connecticut had before it a question similar to the one we are discussing. The adoption of the child in that case was accomplished in 1870, under a law that did not permit an adopted child to inherit from the collateral relatives of the adoptive parents. In 1885 the law was amended and, under the amendment, an adopted child was permitted to inherit from the collateral relatives of the adopting parents. The adopter, James Alldis, died March 13, 1910, and the adopted child, J. Frank Alldis, died in 1923 leaving two children who afterwards died, each leaving one child. The question there presented was whether or not these two grandchildren of J. Frank Alldis, could inherit a portion of the estate of Martha Alldis, a sister of James Alldis, the adopting parent of J. Frank Alldis. The court held they were entitled to such an inheritance and, in commenting upon its conclusion, the court said: "It is not to be assumed, without some substantial basis therefor, that it was intended that the law defining the status of all the then existing adopted children was to be found in the different statutes passed in prior years, and that the Revised Statutes, when passed, should contain the law applicable only to the status of such children as might thereafter be adopted. Nor should it be inferred, without something in the statutes or existing conditions clearly indicating such meaning, that the Legislature intended that different rules as to heirship should apply to different individuals within the class of adopted children." To the same general effect are the cases of In re Rasmussen's Estate, 114 Minn. 324, 131 N.W. 325, 35 L. R.A.,N.S., 216; Dodin v. Dodin, 16 App. Div. 42, 44 N.Y.S. 800; Appeal of Latham, 124 Me. 120, 126 A. 626.

 The adoption of Charles Aubrey Hatfield by Mrs. Fulcher on April 16, 1930, under the old statute, created the relation of parent and child with respect to Mrs. Fulcher's property. The status in that respect was the same as that of the parent's own child. This being true, his status in respect to his inheritable capacity was distinct from the act of adoption and was subject to legislative control. When the new statute was enacted, therefore, it changed the law of descent as it had theretofore existed and is applicable to children adopted under it as well as to those who are thereafter adopted under the new statute and, in our opinion, that was the effect of the holding of the Supreme Court in the Hoch case. The court below therefore erred in holding that the inheritance of Charles Aubrey Hatfield was limited to one-fourth of the estate of his adoptive mother, Mrs. Pearl Hatfield Fulcher.

 Appellant next contends the court erred in holding that his title to an undivided one-half interest in tract number three had not been perfected and was not vested in him by virtue of his possession and that of his predecessor in title for a period of more than ten years under the ten-year statute of limitation, Article 5510, R.C.S.

Tract number three consists of lots 10 and 11 in block 67 of the original town of Borger. It was conveyed to Mrs. Pearl Hatfield and her natural son, Elton C. Hatfield, by the Borger townsite company October 21 1927. At that time the lots

were unimproved. In 1928 a house was moved upon these lots by Mrs. Hatfield and two other houses were placed thereon during the next five or six years. There is some doubt in the testimony as to whether Elton C. Hatfield paid the original consideration for the lots, or the entire consideration, or a portion of it was paid by his mother, Mrs. Hatfield, but the court found, and the testimony shows that it was agreed between them that they would own the property jointly and as tenants in common and the deed so conveyed it to them. As we have already said, Elton C. Hatfield died on April 2, 1933, and his only child died in July of that year at the age of five years. His interest in the property therefore descended to his wife, Aline Hatfield, under Article 2578, R.C.S. The court found that, after the property was improved, the son, Elton C. Hatfield, and his wife, Aline, desired that his mother have the benefit of the rents and revenues as long as she lived, if any such remained after the cost of the improvements was discharged, and that Mrs. Hatfield collected all of the rents, paid all of the expenses, such as taxes and expenses incidental to the operation and maintenance of the property, until her death in 1945. After her death appellant continued to manage and control the property, collect the rents and revenues therefrom, pay the taxes and other expenses incidental to its operation and maintenance until this suit was instituted. Appellant contends that the array of facts revealed by the testimony showing the possession, management and control of the property by Mrs. Fulcher until her death and by appellant thereafter, are such as to impel the conclusion that Mrs. Fulcher and appellant had perfected a title by more than ten years adverse and peaceable possession. The facts relied upon by him are that the property was assessed for taxes under the name of Mrs. Fulcher; all improvements and the incidental expenses of operating and maintaining the property were paid by her; that either Mrs. Fulcher or appellant paid the taxes from the date the property was acquired in 1927 to the date this suit was filed; that Mrs. Fulcher, until her death, and thereafter appellant, collected all of the rents and revenues from the property, and no accounting was made or demanded by either Elton Hatfield or his surviving wife; that there never was any assertion of ownership in the property on the part of either of them; and that appellee, Aline, now Mrs. McAfee, never visited or in any manner communicated with Mrs. Fulcher after the death of Elton C. Hatfield. Appellant earnestly contends that these facts clearly prove and constitute a repudiation of the cotenancy and constructive notice thereof to the appellee, Aline McAfee, of the adverse claim of Mrs. Fulcher before her death and of appellant thereafter, and that the court erred in concluding otherwise.

All of the testimony showed that, after the property was purchased and the improvements placed thereon, Mrs. Fulcher took charge and entered into possession of of it through tenants with the permission, consent and agreement of her son, Elton C. Hatfield. Her entry was therefore in no sense adverse to him but was in recognition of his title to an undivided one-half interest. Appellee, Aline McAfee, testified that Elton did not at any time demand of his mother an accounting to him for any of the rents and revenues of the property and that no accounting had been demanded of Mrs. Fulcher since his death. She said that no such demands were made for the reason that she and her husband desired that his mother have whatever she could realize from the property; that Mrs. Fulcher was in a poor state of health; that she assumed the entire responsibility for her family and it was desired that she have a free hand and do as she pleased with the property while she lived. She said that, after Elton's death, she felt Mrs. Fulcher was taking care of the property and that she did not concern herself about it. The only testimony in the record that indicates an act of repudiation of the cotenancy or even a claim of exclusive ownership by Mrs. Fulcher is that, in discussing the matter with her attorney a few months prior to her death in 1945, she expressed to him a desire to have something done about "getting Elton's name off of that deed to the lots on Washington Street." Her attorney testified that a few weeks later he again

discussed the matter with her and told her that Elton's surviving wife, Aline McAfee, "would come in for part of it." He said that Mrs. Fulcher then told him that she would "one of these days want me to file a suit in trespass to try title. * * *" In our opinion, the most that can be said of this testimony is that it indicated that, at some time in the future, Mrs. Fulcher would probably repudiate the cotenancy. It fell far short of an open, hostile act of repudiation within itself.

 It is well settled by many decisions of our courts that, where a claimant enters into possession of a tract of land as a cotenant or tenant-in-common with another and in recognition of the other's interest, he cannot thereafter perfect a claim of title as against his cotenant without some kind of overt act in repudiation of the cotenant's interest and the assertion of an adverse claim. His claim to the cotenant's interest dates only from his repudiation. Thompson v. Richardson, Tex.Com.App., 221 S.W. 952; Great Southern Life Ins. Co. v. Dodson, Tex.Civ.App., 155 S.W.2d 379; Crump v. Andress, Tex.Com.App., 278 S.W. 422; Federal Land Bank of Houston v. King, Tex.Com.App., 122 S.W.2d 1061, and the many authorities cited in those cases.

 It is further held by our courts that, even after an overt act of repudiation, notice of such act must be brought home to the cotenant. It is not necessary that the notice be actual, that is, that the cotenant have actual knowledge of it. The notice may be constructive and will be presumed when adverse occupancy and claim of title are continued open, hostile, notorious, exclusive and inconsistent with a recognition of the cotenant's interest. Appellant asserts that the facts revealed by the testimony in this case concerning the dominion exercised over the property by him and his deceased wife, rendering and paying taxes thereon in their name, renting the same and retaining the rents and revenues and other acts of dominion we have mentioned are sufficient to establish such constructive notice. If there had been some overt act of repudiation of the cotenancy by Mrs. Fulcher, which was open and hostile to the rights of Elton C. Hatfield or his wife, the rendition and payment of the taxes, use and renting of the property and retaining the rents and revenues, together with the other acts and circumstances detailed by appellant might be sufficient to bring home to Elton or his surviving wife, Aline, notice thereof. We are not passing upon that question. In the absence of any overt, open and hostile act on the part of either Mrs. Fulcher or the appellant, or any showing that either of them paid the taxes, collected the rents and retained the revenues in a capacity different from that in which such acts had theretofore been performed, it must be assumed that they were performed in continued recognition of the cotenancy and in accordance with the initial arrangement between Mrs. Fulcher and her son when the property was acquired.

Our consideration of appellant's contention under this assignment of error, and a thorough investigation of the facts as revealed by the record, bring us inevitably to the conclusion that the judgment of the court below upon the issue of limitation and adverse possession was not only supported by the evidence but that the evidence greatly preponderated in its favor.

 Our conclusions are that the court erred in limiting the interest inherited by Charles Aubrey Hatfield to one-fourth of the estate of his adoptive mother, Pearl Hatfield Fulcher. In our opinion, he inherited all of her property and, he having conveyed his interest therein to the appellant, the judgment should have been in favor of the appellant as to the first, second and fourth tracts and an undivided one-half interest in the third tract. As to the judgment in favor of the appellee, Aline McAfee, for an undivided one-half interest in the third tract, we find no error. The judgment will therefore be reversed and here rendered, decreeing to appellant all of that portion of the property owned by Mrs. Fulcher. As to the undivided one-half interest in the third tract, which was decreed to appellee, Aline McAfee, the judgment of the court below will be affirmed.