**J. M. JONES et al., Appellants,**

v.

**Effie Louise BILDERBACK et al., Appellees.**

No. 10378.

Court of Civil Appeals of Texas.

Austin.

April 18, 1956.

Rehearing Denied May 23, 1956.

Neill & Lewis, Travis E. Baker, San Angelo, for appellants.

Sutton, Steib & Bar, San Angelo, for appellees.

GRAY, Justice.

Appellants, J. M. Jones and Lee Upton, sued appellees, J. E. Edwards, Effie Louise Bilderback and husband John Bilderback, Grace Edwards Johnson and husband E. M. Johnson and Sara Edwards Watson and husband J. E. Watson in trespass to try title to 150 acres of land in Sterling and Glasscock Counties.

Appellees Effie Louise Bilderback, Grace Edwards Johnson and Sara Edwards Wat-

son are the daughters of J. E. Edwards who was the son of J. M. Edwards, deceased.

J. E. Edwards is sometimes referred to as Johnie and as Johne Edwards.

J. M. Edwards died testate December 16, 1951, and by his will which was duly probated he devised to his son Johnie Edwards a portion of Section 3, Block 2, E. L. & R. R. Co. He also devised to Marion Brownfield Edwards, a son of J. E. Edwards "one half of the portion of my estate heretofore bequeathed to my son Johne Edwards on condition that he looks after his Father's welfare in case of my death before the death of his said Father, Johne Edwards, and my wife, F. E. Edwards."

J. M. Edwards also devised property to his other children and to some of his grandchildren.

In 1933 a partition of the estate of J. M. Edwards was had and the appointed commissioners set aside: to Marion Brownfield Edwards 150 acres of land in the form of a rectangle out of the west part of the north half of Section 3 supra on condition "that he looks after the welfare of his father J. E. Edwards," and to appellee J. E. Edwards "a tract of land out of Section No. 3, in Block No. 2, E. L. & R. R. R. Co. Survey, in Sterling and Glasscock Counties, Texas, being all of said Section No. 3, save and except a tract of land of 150 acres in the form of a rectangle off the West end of the North Half of said Section No. 3, and save and except a tract of land of 20 acres in the form of a square out of the S. E. Corner thereto."

The 20 acre tract above mentioned was set aside to Patrick McDermott a grandson of J. M. Edwards.

The report of the commissioner supra was approved by a decree of November 3, 1933.

The 150 acre tract set aside to Brownfield Edwards is the land in question here.

On June 20, 1938, Marion Brownfield Edwards executed a deed of trust on the above 150 acres of land to secure the payment of his indebtedness to Wood Motor Company. The land was sold under the powers of the deed of trust and Wood Motor Company became the purchaser. On May 4, 1948, that company conveyed the land to J. M. Jones who on May 17, 1949, conveyed an undivided one half interest therein to Lee Upton.

After the death of J. M. Edwards and about 1932, the 150 acres of land in question together with the remainder of Sec. 3 and an additional section of land lying north of and adjoining section 3 was enclosed with a fence. However there have never been any cross fences separating the tracts so enclosed. The section of land lying to the north of section 3 was leased by J. E. Edwards from its owner. Some time about 1932, J. E. Edwards lived on the 1,280 acres of land for a while. He had a house, one milk cow, a garden and some fruit trees. The evidence shows only that these improvements were on Section 3 somewhere south of its north boundary line—we do not understand that the parties contend such improvements were on the 150 acre tract except that the milk cow grazed thereon.

J. E. Edwards has at all times leased the 1,280 acres of land to various parties for grazing purposes and has received the rents therefor.

The 150 acre tract is suitable for grazing only for which purpose it has been leased.

It appears that since the death of J. M. Edwards Marion Brownfield Edwards has resided away from J. E. Edwards; that at the time of the trial he was in the United States' Army; that he has made one cash contribution of $30 to J. E. Edwards, and that at all times since the enclosure of the 1,280 acres of land J. E. Edwards has received the rents from the 150 acres. It further appears that J. E. Edwards for some time past has not been capable of attending to his business affairs, that his daughters, appellees, have looked after him, and on September 29, 1952, Effie Louise Bilderback was appointed guardian of his person and estate.

On August 10, 1949, J. E. Edwards and Effie Louise Bilderback as his attorney-in-fact, for a recited consideration of $10 paid, conveyed the 150 acres of land in question to Effie Louise Bilderback, Grace Edwards Johnson and Sarah Edwards Watson.

The 1,280 acres of land has been leased for 50 cents per acre per year which money has been paid to J. E. Edwards or to his guardian and for some time prior to the trial the $75 apportioned for the lease of the 150 acres of land in question has been deposited in an "emergency" fund for the benefit of J. E. Edwards rather than to his general account. Except by letter later noticed appellants have not demanded or received any portion of such rent and neither have appellees other than J. E. Edwards.

Appellants' original petition was filed December 4, 1952.

A jury trial was had and the jury found: (1) that J. E. Edwards did not use and occupy the 150 acres of land under an agreement with Brownfield Edwards; (2) that J. E. Edwards did not use and occupy the 150 acres of land under an agreement with Wood Motor Company, and (3) that defendants in person or through tenants have had peaceable and adverse possession of the 150 acres of land for a continuous uninterrupted period of ten years between November 3, 1933 and December 4, 1952.

A judgment that appellants take nothing by their suit was rendered on the jury's verdict.

Appellants filed their motion for judgment non obstante veredicto which was overruled and appellants say the trial court erred in so doing.

■ We will consider the evidence in its light most favorable to the jury's findings.

The decree of November 3, 1933, approving the report of the commissioners partitioning the estate of J. M. Edwards vested title of the various shares in the parties to whom they were allotted. Art. 6100, Vernon's Ann.Civ.St. Section 3, supra, was partitioned as follows: to J. E. Edwards 470

acres, to Marion Brownfield Edwards 150 acres (the land in question), and to Patrick McDermott 20 acres. The 150 acre tract was burdened with a condition which the evidence (later noticed) shows the parties construed to be a right of J. E. Edwards to use the land or to receive the rents therefrom and that he has claimed and exercised such right only.

Subsequent to the decree of November 3, 1933, J. E. Edwards leased all of the 1,280 acres of land within the enclosure without any incident as to title until Marion Brownfield Edwards executed the deed of trust on June 20, 1938. Lee Upton testified that he prepared the deed of trust, that Brownfield Edwards brought him the description of the land and testified:

"Q. Now, Mr. Upton, when Mr. Brownfield Edwards brought that to you was there any discussion of the provision in there relative to his looking after the welfare of his father in so far as it affected this land? A. Yes, he hadn't told me anything about that provision when we first talked about the deed of trust. When he brought that I asked him what that meant, what it had to do with it, and we discussed thoroughly—

"Q. What did he say? A. He said (Objections and ruling)

"Q. What was the conversation with respect to that provision, Mr. Upton? A. Well, it was a peculiar clause in there and I asked him what it—how they interpreted what it meant. He said, 'My father is using that, and he gets it under my grandfather's will, the use of it as long as he lives.'

"Q. Now then, after that, of course, the foreclosure proceedings were had? A. Yes.

"Q. Now then, following the sale under the deed of trust, I will ask you if you wrote a letter to Mr. J. E. Edwards, Sterling City, Texas, December 29, 1938, of which this is a copy (handing to witness)? A. I did."

A copy of the letter was introduced in evidence and it is in part:

"You are advised that if you desire the use of the 150 acres of land that Wood Motor Company purchased from your son, M. B. Edwards, that it will be necessary for you to make some arrangements with reference to paying rentals thereon at once, as it is our intention either to sell this land to some other person or lease it to some other person unless you desire either to pay rent or purchase."

Lee Upton further testified that J. E. Edwards came to see him in response to the letter; that they had a conversation and testified:

"Q. Now, what was that conversation? A. He brought some kind of a paper or a document pertaining to this will and claimed that he got the use of that for his lifetime, and that he and Brownfield had agreed upon it and he had been using it all the time, and he didn't think he had, under the law and under the will, the right to pay any rents.

"Q. And what was your response? A. Well, my response was that 'if that is the way you construe that, why, you will get to use it, you will pay the taxes on it as long as you live.'

\* \* \* \* \* \*

"Q. State whether or not at any time either he or any of his children up to 1949 ever told you or gave you any sort of notice to the effect that they were claiming the whole title. A. No, they did not. I talked to three of the girls and to one of the boys."

Brownfield Edwards did not testify and except as noted infra the testimony of Lee Upton is not disputed.

J. E. Edwards testified by deposition and said that he heard something about Wood Motor Company acquiring the 150 acres of land under the deed of trust sale but denied having seen or having had a conversation

with Lee Upton. As to his claim to the 150 acres he was asked and answered as follows:

"Q. Was it your claim that you would own it just for life, or that you owned the whole title to it? A. Well, I owned the title, I suppose you would call it; I just owned it, that was all, forever and ever."

However prior to so testifying he had testified:

"Q. And do you know about a tract of 150 acres that is the subject of this law suit? A. Well, yes; I heard it talked over a right smart. Well, the way it was, now, if you want me to explain—

"Q. Go ahead, sir. A. My father gave to my son, Brownfield Edwards, this tract to, you know, look after me, you see; that's just the way it was. I was down for two or three years, and that was the substance of it.

"Q. That was in his will? A. Yes, that was; I think a will to that effect on that. Of course, that ain't the old original will, but I think, there's something on the record to that effect.

"Q. They had a Court proceeding, didn't they, in the District Court, in which this 150 acres was set aside to Brownfield, provided that he take care of you? A. Look after me; I think that's it."

He further said that after his father's death "I was getting the use of it"—the 150 acres of land.

Mrs. Bilderback testified by deposition as follows:

"Q. Now, Mr. Edwards had a life estate in the 470 acres; he still has, doesn't he? A. Yes, sir.

"Q. The 150 acres, is that what you all consider him to have in it, too, or what is your thought about the 150 acres, that he has a life estate in it?

A. Why sure. He has to be looked after.

"Mr. Steib. Do you understand what a life estate is, before you answer that question?

"The Witness. It is the proceeds or issues from.

"Q. Do you understand he has the right to that for life and that upon his death it will be owned by you children? A. Yes, sir.

"Q. Has that been your understanding and claim all along? A. Yes, sir.

"Q. And is that what Mr. Edwards has understood too, up until the time that he may have somewhat gotten a little bit dim, maybe, in his memory? A. Daddy has always considered he had a full section there.

"Q. Just for life? A. Yes, sir. He doesn't recall anything that there is any separate parts or anything of that at all; it never even dawns on him.

"Q. All of you have considered he had just had a right to all that section during his life? A. Yes, sir.

* * * * * *

"Q. Do you remember Mr. Edwards and you as his attorney in fact making a deed to you and your sisters of this 150 acres back in '49? A. Yes, sir.

"Q. What was the reason for that, please? A. I take it grandfather left us 150 acres for daddy's care. It's the only sensible way I can see it, because grandfather knew daddy would sooner or later have to have care.

* * * * * *

"Q. Mrs. Bilderback, just a few questions: Now, when you use the word 'life estate' in your testimony what does that mean to you; just tell me what your impression of a life estate is, as you have used that term in your testimony this morning? A. Well, I would say that it is this pasture lease he is getting, grazing.

"Q. Mrs. Bilderback, the word 'life state' in a legal sense has a definite meaning; do you know what that meaning is in the legal sense? A. The issues mean the monies of.

"Q. Not what I asked you, now. Do you know? Let's say, if you know tell me what it means; if you don't, tell me you don't know. A. I will say I don't know, then.

* * * * * *

"Q. Did you consider that it was all his, though, or just the right for him to have the income from it as long as he lived? A. Well, I would say it was his unless my brother took care of him. Now, that's just a one-man opinion.

"Q. Did you consider that all of you children were entitled to that land upon his death? A. Which are we speaking of.

"Q. The 150 acres? A. No, sir, I guess not. We are entitled to his 470 acres. There's no way to give it back.

* * * * * *

"Q. As between your father and Brownfield did you all consider that your father was entitled to the income from that 150 acres? A. Why, yes, sir, as long as he lived; and if Brownfield takes care of him or will take care of him it's Brownfield's for all I care. That's what grandfather said."

■ We have set out or referred to the cogent evidence relative to appellees' use of and claim to the 150 acre tract of land in question. This evidence shows that after the decree of November 3, 1933, J. E. Edwards leased all of the enclosed 1,280 acres of land and received for himself the lease money; that Brownfield Edwards and J. E. Edwards interpreted the condition attached to Brownfield Edwards' title to the 150 acre tract to mean that J. E. Edwards was to have the use of the land as long as

he lived and that J. E. Edwards began a use of the land consistent with this interpretation. Under these facts then in order for J. E. Edwards to start limitation running against Brownfield Edwards or his successors in title it was necessary for him to bring home to him or them notice actual or constructive that his use and occupancy of the land had ceased to be under the condition of the petition; that he had repudiated the condition and had commenced the assertion of an open and hostile claim to the land. Ballingall v. Brown, Tex. Civ.App., 226 S.W.2d 165, 169, er. ref. n. r. e.

Even if it be said that prior to the partition decree of November 3, 1933, J. E. Edwards enclosed the 1,280 acres of land and then began a claim to all of Section 3 he was a party to the partition and the decree operated as a conveyance by him. Art. 6100, supra. It was necessary for him to begin an open, hostile and adverse claim to the land subsequent to that decree because by it Brownfield Edwards stood in the position of a grantee under a deed from J. E. Edwards. Texas Co. v. Argo Oil Corp., Tex.Civ.App., 277 S.W.2d 308, er. ref. n. r. e. It conclusively appears that J. E. Edwards went into the possession of the 150 acres of land in recognition of the title of Brownfield Edwards for which reason the rule of law applicable to the facts here is:

> " * * * that where a claimant enters into possession of a tract of land in privity with or in recognition of the true owner's title, he cannot thereafter perfect a claim of title or defense under the statute as against the true owner without bringing to his notice a repudiation of the recognition and the assertion of an adverse claim, and the 'right to shield his possession under the statute or to carve an estate, dates only from his repudiation'. Thompson v. Richardson, Tex.Com. App., 221 S.W. 952, 953; 2 Tex.Jur. 144, par. 75, and authorities cited." Great Southern Life Ins. Co. v. Dodson, Tex.Civ.App., 155 S.W.2d 379,

381; Carmichael v. Williams, Tex.Civ. App., 286 S.W.2d 456.

The most that can be said is that the use and enjoyment of the land in question by J. E. Edwards was consistent with that of an owner, however, because there is evidence that fully explains such use and enjoyment it cannot be said that it was inconsistent with the title of Brownfield Edwards and his successors in title or that it was sufficient to give notice of a claim adverse to that title.

In view of the entire record we think that the statement of J. E. Edwards to the effect that he owned the title to the land "I just owned it, that was all, forever and ever" must be considered as a mental process and the expression of opinion and not as showing a hostile and adverse claim to the land. Osborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781. The expression is disputed by his own statements and the other evidence.

■ Under the record before us the question of whether limitation title to the 150 acres of land had ripened in appellees is one of law and not of fact and the implied conclusion of the trial court is not binding here. Chittim v. Auld, Tex.Civ. App., 219 S.W.2d 702, er. ref. n. r. e.

■ It is our opinion that the evidence does not show that the use and claim of appellees to the land in question was commenced and continued under a claim of right inconsistent with and hostile to the title of Brownfield Edwards. Scott v. Rodgers, Tex.Com.App., 6 S.W.2d 731.

Appellees complain by their cross point that the testimony of Lee Upton as to his conversation with Brownfield Edwards was not admissible. In any event the admission of this testimony did not operate to appellees' prejudice before the jury as is shown by the verdict. And further regardless of its presence or absence in the record appellees have failed to discharge the burden resting on them to show by a preponderance of the evidence that notice was brought home that their use and en-

joyment of the land was commenced and continued under a claim of right inconsistent with and hostile to the title of Brownfield Edwards. Scott v. Rodgers and Great South Life Ins. Co. v. Dodson both supra. The admission of the evidence in any event did not harm appellees and for which reason we deem it not necessary to discuss the rule of evidence as to conversations between parties to business transactions.

The judgment of the trial court is reversed and judgment is here rendered that appellants recover the title to the land in question subject only to a life estate of J. E. Edwards therein.

Reversed and rendered.